399 So.2d 1338 (1981)
Johnny L. MILLER
v.
STATE of Mississippi.
No. 52559.
Supreme Court of Mississippi.
May 20, 1981.
Rehearing Denied July 8, 1981.
Albert S. Johnston, III, Johnston & Steinberger, Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and SUGG and HAWKINS, JJ.
HAWKINS, Justice, for the Court:
The appellant Johnny L. Miller was convicted in the Circuit Court of Stone County of the crime of armed robbery of John's Discount Drugs, Inc., by committing an assault upon the person of Vickey Parker with a pistol and taking away certain property named in the indictment, and sentenced to serve a term of ten (10) years. We affirm.
On September 14, 1978, around 1:00 in the afternoon, Mrs. Vickey Parker, a 22 year old clerk in John's Drugs, Inc., in Wiggins, was checking out a customer. At that moment a man, approximately six feet tall, rather heavy set, walked into the store, and when Mrs. Parker asked him if she could help him, he replied, "Yes, you can." He thereupon raised his shirt and pulled out one of those instruments called a "handgun" on television, but by her a "pistol," and instructed her to give him all of her cash out of her register and all of her Class *1339 A narcotics. Frightened, Mrs. Parker gave him all of the money, but told him she did not know where the narcotics were. She said the narcotics were spread out in the prescription department, and she was not the pharmacist. The man told her to tell him when the pharmacist was coming in, and just at that time Mrs. Parker saw the pharmacist, a Mrs. Mary Murphy coming across the parking lot, and a minute or so later Mrs. Murphy came into the store. Another robber was at the front of the store, and went with Mrs. Murphy to the back of the store. According to Mrs. Parker she let the robber have at least $200.00, and perhaps $300.00.
Mrs. Parker had ample opportunity to make a detailed observation of the robber holding the gun on her. She testified she was looking directly at him, and she was staring at the gun he was holding. His hair was pulled down in his face over his forehead, he had a red cap pulled down over his head. The cap had a small brim on it, and he had an overshirt on. She testified he had a real strong, stern look about him, and she noticed he had a protruding chin. She described him as having a "sliding mandible" that slid forward, the mandible being the lower jaw. She recognized this because she was an oral surgeon's assistant, and testified, "the first thing I see when I look at somebody is their mouth." She also recalled the robber had a rather short beard, just beginning to grow. According to her, the man weighed approximately 200 pounds, was about four feet from her, about two arms length, and she observed him for at least three minutes. She got "a real good look at him, right in the face." She identified a photograph made of the appellant later that day as being the man who robbed her, she identified the appellant at a preliminary hearing held a short time later, and also positively identified the appellant in circuit court as being the man who robbed her. Her identification was positive and unequivocal.
The other robber was described by the pharmacist Mrs. Mary Murphy as having reddish hair and a full beard. He had on an orange and green checked shirt, cowboy style, with gripper snappers rather than buttons. He had a cap pulled down over his head.
Upon leaving the drug store the robbers got into a 1977 or 1978 model Trans Am Pontiac automobile which was being backed up by a driver. They entered through the right passenger door. The cap fell off of one of the men as the car proceeded east. The city marshal, Joel Simpson, who happened to be close by at the time, began chase when he observed the car speed off and run a four way stop sign. Although Marshal Simpson reached a speed of 112 miles, the Trans Am left him, and in his opinion was running considerably in excess of 120 miles per hour.
Mississippi Highway Patrolman Douglas Anglado, assigned to Jackson County, was proceeding north on the Seeman Road under the I-10 overpass at the Ocean Springs exit, and about a mile north of the interstate he noticed a white Trans Am coming from the opposite direction, not speeding. Patrolman Anglado spun around in the highway and when he did, the Trans Am sped off, and although the patrolman reached a speed of 110 or 115 miles per hour the car left him.
Mississippi Highway Patrolman Bill Dillon received radio communication of the robbery and of the Trans Am automobile, and that Officer Anglado was chasing a white Trans Am automobile. Officer Dillon began chase when he spotted the Trans Am automobile on the Interstate Highway 10. He followed the car for approximately five miles, driving approximately 150 miles per hour and clocking the Trans Am at over 135 miles per hour. There was one person in the car. A road block was set up at the intersection of Interstate I-10 and Highway 57, and the automobile stopped there. The appellant was removed from the car and arrested. He did not have a shirt on. He was charged with speeding and reckless driving. He was also photographed at that time without a shirt on.
Mrs. Murphy identified the shirt picked up by the officers as the shirt worn by the man she handed the drugs to.
*1340 The appellant's defense at the trial was essentially an alibi. Ronald C. Howell and two more witnesses testified appellant was at Howell's home at the time of the robbery. Both Howell and the appellant testified the Trans Am automobile belonged to another individual named Richard Pittman, and the appellant wanted to borrow Howell's truck which was off at the time being driven by Pittman. According to Howell and the appellant, the Trans Am automobile was loaned by Howell to the appellant to go to a DuPont industry and apply for a job. His explanation for speeding when the Highway Patrolman turned around to follow him was that he was on probation at the time and did not want his probation dropped. He further testified he was not going to DuPont at the time the officer saw him. He claimed he removed his shirt because the air conditioning was not working in the Trans Am, it was a hot day and he was sweating. He did not want to apply for a job with a sweaty shirt. The appellant testified he was six feet three inches tall barefooted, and weighed between 235-240 pounds when arrested. He had one tatoo on each arm, and one on his right hand, the tatoo on the hand being on the outside back of his hand. He testified he gave his brother the new shirt when he was visited at the jail. The tatoo on his right hand could be completely covered by the small finger of the district attorney, and when the appellant held a pistol in front of the jury, he testified he did not know whether or not the tatoo was noticeable to the jury or not.
Appellant strenuously and ably argues the trial court erred in overruling his motion to exclude the testimony of Mrs. Parker because showing her a single photograph of appellant immediately following his arrest was impermissibly suggestive and her in-court identification of appellant was not shown to be based upon an independent source. Thus, he was denied due process of law as provided in the Fifth and Fourteenth Amendments.
There was a valid purpose in the police officers showing Mrs. Parker the photograph of appellant the day of the robbery. Identification was important, not only to the State but the appellant as well. With her recollection of the robbery and appellant fresh on her mind, accuracy was more likely, and had she stated the photograph was not the same man who confronted her in the store, it is likely appellant would not have been charged with the robbery, although his conduct subsequent to the robbery was circumstantially quite suspect. See, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), 388 U.S. p. 301, 87 S.Ct. p. 1972, 18 L.Ed.2d p. 1206, wherein the suspect was taken to the hospital room of a victim.
The United States Supreme Court has criticized identifications which are suggestive, such as showing a single photograph of the suspect to an eyewitness to a crime; producing only the suspect (sometimes handcuffed) for identification by an eyewitness to a crime; also, showing a series of photographs but only one photograph possibly being the perpetrator of the crime (e.g., the perpetrator being blonde, and all photographs except one showing brunettes), or, in a lineup of several persons, only one person bearing any possible resemblance to the perpetrator (e.g., perpetrator being blonde, and all persons in lineup with exception of accused being brunettes). See, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), 388 U.S. pp. 227-235, 87 S.Ct. pp. 1932-1936, 18 L.Ed.2d pp. 1158-1162.[1] The ideal, of course, is to seek to avoid identifications which have been prompted by suggestive procedures.
*1341 That Court, however, has not held failure to follow the ideal procedure for identification necessarily violative of due process, because such procedure in itself does not "intrude upon a constitutionally protected interest," such as a warrantless search, or improper failure to afford counsel. See Kirby v. Sturges, 7 Cir., 510 F.2d 397, p. 406, cited in footnote to Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, 432 U.S. p. 113, 97 S.Ct. p. 2252, 53 L.Ed.2d p. 153.
In investigating crimes and pursuing criminals law enforcement officers are charged with the duty of ferreting out the criminal, as well as protecting the rights of all persons suspected of crimes. A conscientious officer does the best he can with the means available to him. In identifying a criminal perpetrator it is not always possible, especially in rural communities such as the case here, to follow some textbook ideal. Such failure to take all possible precautions, except in the most unusual or manifestly suspect circumstances, should only go to the credibility of the identification testimony, not its competency. Juries are capable of weighing the testimony of eyewitnesses. The United States Supreme Court has recognized this. It is, therefore, a matter for the trial court, considering all circumstances surrounding the identification, to determine whether or not from the "totality of the circumstances," the testimony pertaining to the identification should be admitted or excluded. The United States Supreme Court has given guidelines on admissibility in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), 409 U.S. p. 199, 93 S.Ct. p. 382, 34 L.Ed.2d p. 411, and cited in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). This test has been followed in Mississippi in the cases of Stewart v. State, 377 So.2d 1067 (Miss. 1979), Scott v. State, 359 So.2d 1355 (Miss. 1978), Fells v. State, 345 So.2d 618 (Miss. 1977), and Bankston v. State, 391 So.2d 1005 (Miss. 1980). The stated test from Neil v. Biggers, 409 U.S. p. 199, 93 S.Ct. p. 382, 34 L.Ed.2d p. 411, is as follows:
"We turn, then to the central question, whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (emphasis added)
As stated in Manson v. Brathwaite, 432 U.S. p. 114, 97 S.Ct. p. 2253, 53 L.Ed.2d p. 154, "... reliability is the linchpin in determining the admissibility of identification testimony ..."
From the facts revealed by the record, as set forth in this opinion, it is clear the witness Mrs. Parker satisfactorily met all the tests of Neil v. Biggers and there was no error on the part of the trial court in overruling the motion to exclude such testimony.
Complaint is also made of the refusal of the circuit court judge to give defendant's instruction D-8:
"INSTRUCTION NO. D-8  FILED NOVEMBER 2, 1979
"The Court instructs the jury that the evidence in this case raises the question of whether the Defendant was in fact a criminal actor and necessitates your resolving any conflict in testimony on that issue.
"The burden of proof is on the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the Defendant as the perpetrator of the crime charged.
"If the State has failed to prove the Defendant to be the perpetrator of the crime charged beyond a reasonable doubt, then you shall find the Defendant not guilty."
*1342 The first and third paragraphs of this instruction redundantly emphasize the sole point in issue, namely: was appellant the person who held the gun on Mrs. Parker and robbed her. The second paragraph alone contains a correct statement of the law and the trial judge might very well have given the instruction had it contained this single paragraph. We held in Newell v. State, 308 So.2d 71 (Miss. 1975) it is discretionary for the trial judge to modify requested instructions.
No reversible error was committed by the trial judge in refusing this instruction in any form, however. Juries decide pertinent factual disputes in a case. We must accord them reasonable intelligence as well as reasonable fair-mindedness. Nothing could have been plainer to the jury in deciding this case than they had to believe beyond a reasonable doubt Mrs. Parker was correct in identifying appellant as the person who robbed her that day in the store. Without such belief, they were under a sworn duty to acquit appellant.
The trial judge had already given the jury two instructions which amply covered what the defense sought to additionally cover by this instruction. Instruction S-1 instructed the jury they had to believe beyond a reasonable doubt appellant Johnny L. Miller feloniously committed the assault upon Mrs. Parker with a pistol and robbed her.[2] Instruction C. 14D instructed the jury the burden was upon the State to prove the defendant guilty of every material element of the crime, and concluded with this sentence:
"Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty."
In Staten v. State, 30 Miss. 619 (1856) this Court stated a defendant on trial for a felony is entitled to have the law distinctly and precisely stated. 75 Am.Jur.2d Trial § 573, p. 588 states:
"The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them."
23A C.J.S. Criminal Law § 1189, p. 471, states:
"Instructions are statements of the law applicable to the facts, and are given for the guidance of the jury in considering the testimony."
The learned trial judge having once clearly and succinctly informed the jury of the law and their duty in arriving at a verdict, was under no obligation to repeat it in any form. Fisher v. State, 150 Miss. 206, 116 So. 746 (1928); Lacaze v. U.S., 391 F.2d 516 (5th Cir.1968).
We find no merit in any of the other assignments, and it follows the conviction should be, and is hereby affirmed.
AFFIRMED.
*1343 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
PATTERSON, C.J., and SUGG and WALKER, JJ., specially concur.
SUGG, Justice, specially concurring:
I concur in the results reached in this case but am of the opinion that Instruction D-8 requested by the defendant was a clear statement of the factual issue involved in this case. It homed in on the real issue  was the defendant one of the robbers?
In my opinion refusal of the instruction was not reversible error because the other instructions adequately covered the issue of identity and the burden of proof required by the state.
PATTERSON, C.J., and WALKER, J., join in this opinion.
NOTES
[1] These pages from the opinion, together with numerous footnote citations, show the peril of such identification. The opinion then contains the following conclusion, 388 U.S. p. 235, 87 S.Ct. p. 1936, 18 L.Ed.2d p. 1162: "The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness  `that's the man.'" (emphasis added)
[2] INSTRUCTION NO. S-1 - FILED NOVEMBER 5, 1979
 IN THE CIRCUIT COURT OF STONE COUNTY,
 MISSISSIPPI
 STATE OF MISSISSIPPI
 VERSUS NO. 994
 JOHNNY L. MILLER
 INSTRUCTION NO. S-1

The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Johnny L. Miller, on or about the time and date charged and testified about, in Stone County, Mississippi, did unlawfully, wilfully and feloniously commit an assault upon the person of one Vickey Parker, with a certain deadly weapon, to-wit: a pistol, and did then and there feloniously put her, the said Vickey Parker, in fear of immediate injury to her person by the exhibition of the said deadly weapon as aforesaid and with the unlawful and felonious intent to steal, he the said Johnny L. Miller did then and there unlawfully, wilfully and feloniously take, steal and carry away from the person and in the presence of and against the will of the said Vickey Parker, certain personal property, which she, the said Vickey Parker, being then and there an agent of John's Discount Drugs, Inc., a Mississippi Corporation, located at Wiggins, Mississippi, then had in her custody or under her control, to-wit: 1 x 1000 Percodan; 1/2 x 100 Percodan; 1 x 100 Preludin Enduret 75 mg; 1 x 7 Preludin Enduret 75 mg; 1 x 100 Preludin 50 mg; 1 x 20 Quaalude 300 mg; 1 x 7 Quaalude; 2 Boxes Demorol Ampulee, approximately worth $200.00 and between $200 and $300 in American currency in denominations of $1.00, $50.00 and $10.00 and $20.00 of the personal property of the said John's Discount Drugs, Inc., a Mississippi Corporation; then if you so believe from the evidence in this case beyond a reasonable doubt the defendant is guilty and it is your sworn duty to say so by your verdict.
 "GIVEN"
 J.R.G.