751 So.2d 1155 (1999)
Herman BROWN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00443-COA.
Court of Appeals of Mississippi.
September 7, 1999.
Rehearing Denied November 9, 1999.
*1156 Ross R. Barnett, Jr., Jackson, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND MOORE, JJ.
DIAZ, J., for the Court:
¶ 1. Herman Brown was convicted of rape by a jury of the Jefferson County Circuit Court and received a thirty year sentence on February 19, 1998. He now appeals to this Court, asserting that the verdict was against the overwhelming weight of the evidence; that the circuit court erred in refusing to suppress evidence of the victim's identification of the defendant by his driver's license photograph; that the jury was not properly instructed and that the sentence imposed by the circuit court was excessive. Finding no merit to the assignments of error, we affirm his conviction and the sentence imposed by the court below.

FACTS
¶ 2. On September 27, 1997, at around 5:30 a.m., Annie Bailey's husband answered a knock on the front door of their house on Coon Box Road in Jefferson County. A nude young woman, badly scraped and bruised, was standing there. Mrs. Bailey let the girl inside, gave her a house dress and a cloth for her bloody lip and called the sheriff's department. She testified that the girl just sobbed and sobbed and did not say anything until a deputy sheriff arrived. The sheriff called an ambulance to take her to the hospital.
¶ 3. Earlier in the evening, the nineteen year old girl and one of her friends had gone to Vicksburg to a night club called O'Dad's. Around 3:00 a.m., she asked Brown, with whom she was acquainted as "Michael," for a ride back to Jackson. He agreed, but told her he had to take his friend, Shawn Sims, home first. She got into Brown's black and white Jeep. After they drove for a while, she mentioned to Sims that they did not appear to be headed toward Jackson. She testified that Brown touched Sims' arm and told him not to say anything about what he was going to do; at that point, she realized that "it was too late." They turned down a dark road, which she identified as Red Lick-Lorman Road. Brown turned off the lights of the Jeep and they sat there in the dark. The young woman testified that she was scared and shaking, and finally asked if she could get out to go to the bathroom. Brown directed Sims to watch her. He then ordered her to get back into the Jeep, take off her clothes and play with his "thing," threatening to kill her. Brown attempted to have intercourse with her; when he was unable to maintain an erection, he threatened Sims and made him rape the girl, too. He forced her back into the Jeep and drove off. She jumped from the moving vehicle and ran for help.
¶ 4. Sims had fallen asleep in the back seat of the Jeep, when he realized that they had passed his house and stopped on a dark road. His account of the incident, despite discrepancies in minor details, corroborates the victim's testimony. Brown, whom he knew as "Chris," told him to get out of the Jeep. He obliged and could hear Brown and the girl fighting. She emerged naked from the vehicle. Brown told the girl to bend over the back of the tire and ordered Sims to have sex with her. Sims, who suffers from Tourette Syndrome, testified that he was scared and nervous; Brown was cursing and threatening both of them and the girl was begging him to *1157 not let Brown hurt her. He admitted to raping her while Brown watched and attempted to stimulate himself. Brown then told Sims to move and he "beg[a]n to hunch, and then he went to talking like he couldn't get hard."
¶ 5. Dr. Johnny Bealls, the emergency room physician who treated the young woman, testified that she had knife wounds on her face as well as bruises and abrasions on her chest, thigh and leg, consistent with jumping out of a vehicle. She said that she had been raped and complained of pain in her vagina, hip, thigh and leg. A rape test revealed no evidence of seminal fluid. Sims, however, testified that he had used a condom and a broken condom was found at the scene.

DISCUSSION

I. WHETHER THE MOTION TO SET ASIDE THE VERDICT OR FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 6. In his first assignment of error, Brown asserts that the circuit court erred in refusing to grant his motion to set aside the verdict or for a new trial because the jury verdict was against the overwhelming weight of the evidence. He contends that the testimony of the victim as well as that of his co-indictee, Shawn Sims, was unreliable, inconsistent and contradictory. He also argues that there is no physical evidence linking him to the rape and that the State failed to prove all of the elements of the crime with which he is charged.
¶ 7. Matters regarding the weight of the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984). Our scope of review in considering challenges to the weight of the evidence, therefore, is limited. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Rice v. State, 723 So.2d 1239, 1243 (Miss.1998); Eakes v. State, 665 So.2d 852, 872 (Miss.1995).

1. Whether the Elements of the Crime of Rape Were Proven
¶ 8. Three elements are necessary to prove the crime of rape: (a) carnal knowledge, (b) without consent and by force, (c) of a person age fourteen and upward. Hailey v. State, 537 So.2d 411, 414 (Miss.1988). The State must prove that there was "some penetration" of the victim's vagina by the defendant's penis. Wilson v. State, 606 So.2d 598, 599 (Miss. 1992); Davis v. State, 406 So.2d 795, 801 (Miss.1981). Brown, however, contends that because he was unable to sustain an erection, the requisite proof of penetration is absent. In Lang v. State, 230 Miss. 147, 159, 87 So.2d 265 (1956), the Mississippi Supreme Court stated that "`the fact of penetration must be established beyond a reasonable doubt, but it need not be proved in any particular form of words, and circumstantial evidence may suffice.'" Id. (quoting 75 C.J.S. Rape § 71)(1952). Only "slight penetration" need be shown. Jackson v. State, 452 So.2d 438, 440 (Miss. 1984).The young woman testified quite explicitly that "[h]e stuck it in, but it wouldn't get hard" and "he forced it in me whether it was hard or soft." Her testimony is sufficient to establish, at the very least, the requisite "slight penetration."

2. Whether the Victim's Testimony Was Unreliable, Inconsistent and Contradictory
¶ 9. Brown attacks the victim's testimony as unreliable and inconsistent because at the time of the incident it was very dark and she had "unclear recollections of that night" and admitted to having had a beer earlier in the evening. He *1158 suggests that it did not appear that "she had a sufficient grasp of the terminology of rape," noting particularly the girl's testimony that "[h]e erected me [sic]he forced his thing in me even when it wouldn't get hard and when it would get hard, and that's what made him snap because it wouldn't...." Without citing any authority, he queries whether she even knew the difference between rape and sexual battery. He also points out various discrepancies in her testimony such as whether her assailant ripped her clothes off or forced her to take them off and the extent to which she was acquainted with him prior to the incident.
¶ 10. It is within the province of the jury to resolve any conflicts and discrepancies in witnesses' testimony. Scott v. State, 728 So.2d 584 (¶ 26) (Miss.Ct.App.1998); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Indeed, the discrepancies complained of are not determinative of the issue of whether the elements of the crime were satisfied. Rather, looking at the evidence in a light most favorable to the verdict, as we must, the victim's testimony is consistent in establishing that although Brown was unable to maintain an erection or achieve orgasm, there was at least some penetration of her vagina by his penis. Her testimony, as well as that of Sims, establishes that Brown used force on the girl and forced Sims to rape her, too. Their testimony was reinforced by that of Dr. Johnny Bealls, who treated the girl in the emergency room and stated that the wounds on her face appeared to be knife wounds. Moreover, it is clear from the testimony of both Sims and the victim that she acquiesced to the actions of the two men only out of fear of additional harm.

3. Whether Sims' Testimony Was Unreliable and Did Not Establish a Rape by Brown
¶ 11. Brown also argues that Shawn Sims' testimony was unreliable because he was a co-indictee and his testimony was not always consistent with that of the young woman. Brown notes discrepancies in the recall of events between Sims' testimony and that of the victim. She said that Brown pulled a knife on her; Sims testified that he did not see the knife. However, Brown had ordered him out of the Jeep and her testimony indicates that the wounds occurred while she was alone in the vehicle with Brown. She testified that Sims raped her twice; he testified that he had sex with her one time before Brown made him back off so that he could try again, stating "it was like a 15 second, you know." As discussed above, these discrepancies are within the province of the jury to resolve. Likewise, it is the jury which is charged with determining the reliability of the witnesses. Carr v. State, 655 So.2d 824, 837 (Miss.1995). While, as Brown argues, Sims' testimony does not establish whether Brown satisfied the carnal knowledge element of the crime, it corroborates the victim's testimony that she was taken forcefully and without her consent.

4. Whether There Was a Complete Absence of Physical Evidence Linking Brown to the Rape
¶ 12. Noting that the tests performed by the Mississippi Crime Laboratory found no hairs, fibers, blood, semen or DNA material connecting him with the victim, Brown further contends that there is a complete lack of physical evidence linking him to the rape. However, the physical evidence Brown claims is missing is not even necessary to prove that a rape occurred. To the contrary, the testimony of the victim has been found to be sufficient to sustain a rape conviction unless it is substantially contradicted by other testimony or physical evidence. Christian v. State, 456 So.2d 729, 734 (Miss.1984); Otis v. State, 418 So.2d 65, 67 (Miss.1982). There is consistent testimony by the victim and Shawn Sims identifying Brown and his black and white jeep to connect him with the crime.

II. WHETHER SHERIFF WALKER'S PROCUREMENT FROM THE *1159 VICTIM OF AN IDENTIFICATION OF BROWN SHOULD HAVE BEEN SUPPRESSED
¶ 13. The victim told authorities that she had been raped by a young man who identified himself as "Michael" and that he drove a black and white Jeep. Based on her identification of the vehicle, Sheriff Walker retrieved Brown's suspended driver's license from his desk and returned to the hospital, where the victim was still in the emergency room. He testified that he showed the license photograph to her, asked if he looked like the person and she immediately said, "[o]h, yes, that's the person." Brown sought to have the testimony regarding the victim's identification of his picture suppressed. He now asserts that the circuit court erred in allowing into evidence testimony about the circumstances under which the identification was made.
¶ 14. It is within the discretion of the circuit court "considering all circumstances surrounding the identification," to determine whether testimony about an identification should be admitted or excluded. Miller v. State, 399 So.2d 1338, 1341 (Miss.1981). Indeed, identifications made on the basis of a single photograph have been criticized as impermissibly suggestive. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). They are not, however, per se inadmissible. Rather, the key question is "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil, 409 U.S. at 199, 93 S.Ct. 375. In United States v. Buckhalter, 986 F.2d 875, 877 (5th Cir.1993), the Fifth Circuit articulated a two-step analysis, determining first whether the procedure used to identify the defendant was impermissibly suggestive and further, whether "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification."
¶ 15. Sheriff Walker retrieved Brown's expired driver's license for the victim to identify based on her description of the vehicle her assailant drove, which was known to Walker. Even if showing a single picture to the victim while she was still in the emergency room, albeit in a fairly calm state, may be construed as impermissibly suggestive, we must look at the totality of the circumstances to determine the likelihood of whether a misidentification was made. In Neil, the United States Supreme Court suggested that courts consider various factors including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199, 93 S.Ct. 375. In the case sub judice, the victim had spent some time with Brown during the evening and had seen him around prior to that time. The details surrounding the extent of her acquaintance with Brown are somewhat inconsistent. However, she had met him prior to the incident and testified that she was sufficiently acquainted with him to ask him for a ride home. Although she stated that he had identified himself to her as "Michael," her description of Brown's Jeep led Sheriff Walker to retrieve his suspended license for her to identify. She was shown the photograph only a few hours after the incident and immediately identified Brown as the man who had raped her. Based on those factors, coupled with Shawn Sims' corroboration of the events of the evening, the identification procedure did not result in an irreparable misidentification. The circuit court, therefore, did not abuse its discretion in admitting Sheriff Walker's testimony.

III. WHETHER THE JURY WAS PROPERLY INSTRUCTED ON THE ELEMENTS OF THE CRIME CHARGED
¶ 16. Brown next challenges whether the jury was properly instructed on the elements of the crime of rape. He notes *1160 an error in Instruction No. 3, which instructed the jury to find Brown guilty if it believed that the crime of rape occurred in Copiah County rather than in Jefferson County, where witnesses testified that the crime took place. There is no evidence that Brown raised any objection to the content of Instruction No. 3. When counsel fails to object to a proposed jury instruction, it acts as a procedural bar and the issue is not properly before this Court. Tran v. State, 681 So.2d 514, 518 (Miss. 1996); Moawad v. State, 531 So.2d 632, 635 (Miss.1988).
¶ 17. Brown further argues that the circuit court did not provide the jury with any definition of the term "penetration" as used in the context of rape. The record indicates that Brown did not offer any such instruction. "[T]he trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so." Newell v. State, 308 So.2d 71, 78 (Miss.1975). Accordingly, there is no merit to the assignment of error.

IV. WHETHER THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE
¶ 18. After finding Brown guilty of rape, the jury could not agree on the sentence to impose. He therefore was sentenced by the circuit court to a term of thirty years. A sentence within the limits fixed by the governing statute will not be reversed on the ground that the lower court imposed an excessive sentence and abused its discretion. Presley v. State, 474 So.2d 612, 620 (Miss.1985). Brown concedes that his sentence is within the statutory limits. He complains, however, that his sentence is disproportionate to the five year sentence for sexual battery given Sims as part of his plea agreement.
¶ 19. The record clearly indicates that Brown was the instigator of the crime. He drove the vehicle and initiated the rape. It was only after he was unable to sustain an erection that he threatened Sims and forced him to rape the girl, too. Sims testified that he was scared for himself and for the victim; she told him, "Go ahead, just don't let him kill me." The young woman's testimony was consistent with Sims, indicating that she let Sims do what Brown told him to do so that Brown would not hurt her and that Brown became angry with Sims when he refused to continue raping her. Based on the facts of the case, there is no merit to Brown's assertion that his sentence is disproportionate to Sims'.

CONCLUSIONS
¶ 20. The evidence in the record clearly supports the jury's verdict. We further find no error in the admission of evidence, the instruction of the jury, or the sentence given Brown by the circuit court. Accordingly, we affirm Brown's conviction and sentence for rape.
¶ 21. THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT OF CONVICTION OF RAPE WITH A SENTENCE TO SERVE THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT GIVEN FOR TIME SERVED PRIOR TO TRIAL AND WHILE AWAITING SENTENCING, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.