# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00487-COA

**SIDNEY BISHOP A/K/A SIDNEY E. BISHOP**                               **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2018 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MATTHEW WYATT WALTON |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/23/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     An Attala County jury convicted Sidney Bishop of four counts of gratification of lust, two counts of sexual battery, and one count of statutory rape. The trial court sentenced Bishop to serve twenty years with five years suspended for Count II (sexual battery) and to fifteen years to be served concurrently to Count II for each of the remaining six charges. Counts I–V pertained to one minor female ("Alice"); Counts VI and VII pertained to another minor female ("Brenda").[1]

---

[1] This Court declines to identify sexual abuse victims by name or any other identifier. To protect the victims' privacy, their names and the names of family members have been

¶2.    After filing an unsuccessful post-trial motion, Bishop timely appeals.  He raises the following issues:  (1) whether the evidence was sufficient for the statutory rape conviction in Count III or whether the verdict was contrary to the overwhelming weight of the evidence; (2) whether Bishop was irreparably prejudiced by an improper limitation of his cross-examination of Brenda's mother; (3) whether the trial court erred by excluding evidence that Brenda had been in the presence of another man suspected of abuse; and (4) whether trial counsel was ineffective for failing to request an alibi instruction.

¶3.    After a thorough review of the record, we affirm.

**FACTS**

¶4.    Two girls, Alice and Brenda, accused Bishop of sexual abuse.  We will recount the facts of the case and the course of the proceedings as they pertain to the respective victims and corresponding counts charged.

### I.    Alice

¶5.    Alice was born in 2001.  When she was about five years old, she and her mother began attending church, where she met Bishop and his wife, Dorothy.  Alice described how Bishop and Dorothy quickly became friends with Alice's mother.  At first, Bishop was nice to Alice; thereafter, Bishop would separate her from others at church, take her to the back of the church, and touch her inappropriately.

¶6.    When Alice was about seven, and after the abuse had already begun, Alice and her mother were evicted from their apartment.  The Bishops owned a garage apartment and

_____

replaced with fictitious names.

allowed Alice and her mother to stay there. The sexual abuse continued within the confines of Bishop's household, where Bishop would invite Alice to a back bedroom to play with his cats while his wife, Dorothy, remained in the front of the house in her recliner. The abuse ended when Alice was removed from her mother's custody in February 2016 due to her mother's inability to properly care for her.

¶7. The following five counts pertain to Alice and recount, in detail, the abuse she suffered.

### A. Count I: Gratification of Lust

¶8. Alice testified that when she was between five and seven years old, Bishop would take her to the back of their church and touch her breasts and buttocks both on top of and inside her clothing. Alice testified that Bishop told her that she was "pretty or sexy and that he loved [her] and that [she] was beautiful." These events occurred between September 20, 2006, and April 1, 2007.

### B. Count II: Sexual Battery

¶9. The abuse continued after Alice moved into Bishop's garage apartment with her mother. Alice testified that during visits to Bishop's house, Bishop would take her to his bedroom, ostensibly to show her his cats. Once in the bedroom, Bishop would pull her pants down and lay her on his bed. Bishop would then touch her vagina, both inside and out, using his fingers, hands, and mouth. On some occasions, Bishop would penetrate Alice's vulva. Bishop abused Alice like this "once a week or more."

### C. Count III: Statutory Rape

3

¶10. Alice testified that in April 2007, just a few days before Easter Sunday, Bishop raped her. Alice testified that Bishop put something in her juice which made her feel lightheaded. He then placed her on the bed in the back bedroom and removed her pants. After Alice struggled to the extent that she could, Bishop got on top of her. While Bishop was on top of Alice, she felt pressure and pain in her vaginal area. She passed out, and when she regained consciousness, she was covered in blood and surrounded by bloody sheets. Bishop cleaned Alice up, took the sheets off of the bed and placed them in a bag, and put Alice's pants back on her. Alice continued to find traces of blood in her panties for two months thereafter. According to Alice, Bishop threatened to kill her and her mother if Alice told anyone about the rape.

### D. Count IV: Sexual Battery

¶11. The abuse that formed the basis for Count II continued after Bishop had raped Alice. Bishop continued to put his mouth, hands, and fingers in and around Alice's vagina. Alice testified that this abuse continued until she was about ten years old.

### E. Count V: Gratification of Lust

¶12. After Alice turned ten years old, Bishop continued to touch Alice inappropriately. Alice testified that whenever Bishop had the chance, he would put Alice in a "death-like grasp" and touch her breasts and butt as he had done before. Bishop would also pull out his penis and ask Alice to touch it and kiss it. When Alice refused, Bishop would force his penis to her lips. The abuse finally ended when Alice was removed from her mother's custody in February 2016.

4

## II. Brenda

¶13.   Brenda was born in 2004.  She lived with her parents and siblings in a house across the street from the Bishops.  As neighbors, the Bishops would occasionally visit Brenda's family to eat, talk, and watch television together.  Brenda testified that she had a "good relationship" with Bishop and that everyone in her family was close to the Bishops.

¶14.   Most of the abuse Brenda suffered occurred in the same place and in the same manner as Alice.  Like Alice, Bishop would lure Brenda over to his house under the guise of playing with his cats.  While there, Bishop would sexually abuse Brenda in a back bedroom while Dorothy remained in her recliner near the front of the house.  Other instances of abuse occurred in Brenda's own home.  The abuse finally ended when Brenda told her parents that Bishop had been sexually abusing her.

¶15.   The following two counts pertain to Brenda and detail the abuse she suffered.[2]

### A. Count VI:  Gratification of Lust

¶16.   Brenda testified that Bishop first touched her inappropriately when she was eleven years old on Thanksgiving Day.  Brenda was alone in her bedroom watching TV after she had eaten supper.  Everyone else present, including Brenda's family, Dorothy, and Alice, were in the kitchen when Bishop entered Brenda's room to give her $5 or $10 as a gift. While alone with Brenda, Bishop placed his hand on her vagina on the outside of her clothes. Bishop said nothing when he touched Brenda, and he quickly left the room afterwards.

### B. Count VII:  Gratification of Lust

_____

[2] Apart from the events comprising Counts VI and VII, Brenda also testified that Bishop forced her hand down his pants to touch his penis.

5

¶17. About a week after Brenda's birthday, Bishop invited Brenda to come over to see his cats. Brenda testified that Bishop took her to a back room and touched her breasts underneath her clothes. According to Brenda, Bishop told Brenda that "he wished he could have [her] and just stuff like that." Brenda also recounted that Dorothy was always in the Bishops' living room "[e]ither on the phone or writing or talking or something."

## COURSE OF PROCEEDINGS

¶18. On March 7, 2018, an Attala County jury convicted Bishop of four counts of gratification of lust in violation of Mississippi Code Annotated section 97-5-23(1) (Rev. 2014), two counts of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), and one count of statutory rape in violation of Mississippi Code Annotated section 97-3-65(b) (Rev. 2014). The trial court sentenced Bishop as follows:

| COUNT I | Gratification of Lust | 15 Years, Concurrent with Count II |
| COUNT II | Sexual Battery | 20 Years, with 5 Years Suspended |
| COUNT III | Statutory Rape | 15 Years, Concurrent with Count II |
| COUNT IV | Sexual Battery | 15 Years, Concurrent with Count II |
| COUNT V | Gratification of Lust | 15 Years, Concurrent with Count II |
| COUNT VI | Gratification of Lust | 15 Years, Concurrent with Count II |
| COUNT VII | Gratification of Lust | 15 Years, Concurrent with Count II. |

¶19. Bishop filed a motion for a judgment notwithstanding the verdict (JNOV) or a new trial, which the trial judge denied on March 26, 2018. Bishop timely filed his notice of appeal on April 2, 2018, raising the following issues: (1) whether the evidence was sufficient for the statutory rape conviction in Count III, or whether the verdict was contrary to the overwhelming weight of the evidence; (2) whether Bishop was irreparably prejudiced by an improper limitation of his cross-examination of Brenda's mother; (3) whether the trial court

6

erred by excluding evidence that Brenda had been in the company of another man suspected of abuse; and (4) whether trial counsel was ineffective for failing to request an alibi instruction. We discuss each of these issues in turn.

## DISCUSSION

**I.    The State presented sufficient evidence for Bishop's statutory rape conviction, and the jury's verdict was not against the overwhelming weight of the evidence.**

¶20.    Bishop first asserts that there was insufficient evidence to convict him of statutory rape—specifically, he contends that evidence of penetration was lacking. Alternatively, Bishop asserts that the verdict was against the overwhelming weight of the evidence.

¶21.    This Court applies a de novo standard of review of a trial court's denial of a motion for a JNOV. *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 446 (¶8) (Miss. 2015). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and [we] will affirm the denial of a JNOV if, viewing the evidence in a light most favorable to the verdict, there is substantial evidence to support the verdict." *Id*. (internal quotation marks omitted).

¶22.    A motion for a new trial has a different standard of review than a JNOV and challenges the weight of the evidence. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). We will reverse the trial court's denial of a motion for a new trial only if the trial court abused its discretion by doing so. *Id*. "Our role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017).

7

## A.    Sufficiency of the Evidence

¶23.    Bishop asserts that the State presented insufficient evidence to support one of the elements of his statutory rape conviction in Count III—penetration.[3]  Under section 97-3-65(1)(b), the crime of statutory rape is committed when a person of any age, who is at least twenty-four months older than the subject child and is not the subject child's spouse, has sexual intercourse with a child under the age of fourteen.  To establish the offense of rape, the State must prove that there was "some penetration" of the victim's vagina by the defendant's penis; however, only "slight penetration" needs to be shown.  *Wilson v. State*, 606 So. 2d 598, 599 (Miss. 1992).

¶24.    Proof of penetration is not necessary if there is evidence that the private parts of the child younger than sixteen have been lacerated or torn.  Miss. Code Ann. § 97-3-65(5).  Absent such evidence, proof of penetration is required.   "Actual medical evidence of penetration, however, is not necessary," and penetration "need not be proved in any particular form of words . . . ."  *Wilson*, 606 So. 2d at 600; *see also Morris v. State*, 913 So. 2d 432, 435 (Miss. Ct. App. 2005) (¶13) ("The lack of medical testimony does not vitiate the claim of slight penetration of the vulva or labia.").   Sufficient evidence may include medical testimony or testimony by the victim.  *Morris*, 913 So. 2d at 435.  Thus, "circumstantial evidence may suffice" so long as penetration is established beyond a reasonable doubt.  *Wilson*, 606 So. 2d at 600.

¶25.    On direct examination, Alice explicitly testified that Bishop put his penis inside of her

---

[3] Bishop does not challenge the sufficiency of the State's evidence as to any other element of Count III.

8

vagina; however, on cross-examination, Alice stated that she assumed it was Bishop's penis inside of her, because he was on top of her and she was unable to see his penis. Notwithstanding, Alice provided additional testimony sufficient to prove penetration. She testified that Bishop put something in her juice that made her feel lightheaded. He then placed her on the bed in the back bedroom and removed her pants. After struggling with Bishop to the extent that she could, Bishop got on top of Alice. While Bishop was on top of Alice, she felt pressure and pain in her vaginal area. She passed out, and when she regained consciousness, she was covered in blood and surrounded by bloody sheets. Bishop then cleaned Alice up, took the sheets off of the bed and placed them in a bag, and put Alice's pants back on her. Alice continued to find traces of blood in her panties for two months thereafter.

¶26.    "When [we] review[] the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements[;] [r]ather, we must decide whether a reasonable juror could rationally say that the State did." *Id*. (emphasis and citation omitted). When considering whether sufficient evidence exists to uphold a conviction, our supreme court has stated:

> This Court considers each element of the offense and reviews all of the evidence in the light most favorable to the verdict. This Court must accept as true all credible evidence consistent with guilt. This Court must give the State the benefit of all favorable inferences that may reasonably be drawn from the

9

evidence. Moreover, matters regarding the weight and credibility given the evidence are the province of the jury. This Court may reverse only when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Thus, if any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand.

*Cowart v. State*, 178 So. 3d 651, 666 (¶¶ 40-41) (Miss. 2015) (citation, internal quotation marks, and emphasis omitted).

¶27.    Bishop contests Alice's testimony and contends that when Alice's testimony is placed under scrutiny, the evidence presented at trial is insufficient to support his conviction for statutory rape. *See Killingsworth v. State*, 374 So. 2d 221, 223 (Miss. 1979) ("While it is true that a conviction for rape may rest on the uncorroborated testimony of the person raped, that testimony should always be scrutinized with caution."). First, Bishop acknowledges that "Alice said she was bleeding after the alleged rape." Bishop, however, contends that this statement is irrelevant because there "was no testimony or medical evidence from whence the bleeding came," and Alice did not see, but rather assumed, Bishop's penis penetrated her vagina. As stated above, however, actual medical evidence of penetration is not necessary, and penetration may be proved via Alice's testimony or other circumstantial evidence.[4] *See Wilson*, 606 So. 2d at 600; *Morris*, 913 So. 2d at 435.

¶28.    Bishop also entered into evidence a surgery report showing that he had undergone a radical retropubic prostatectomy in 1997. Bishop and Dorothy both testified that Bishop

_____

[4] Alice testified that Bishop threatened to kill her and her mother if she told anyone about the rape. Moreover, when the prosecutor asked Alice about the time frame in which Bishop threatened her, Alice testified that it "was after the penetration."

10

could not obtain an erection after this surgery; this testimony, however, did not discredit or contradict Alice's testimony that Bishop's penis penetrated her. The State need not present evidence that a defendant is able to obtain an erection under section 97-3-65(1)(b); rather, the State must only show evidence of slight penetration. *See also Brown v. State*, 751 So. 2d 1155, 1158 (¶10) (Miss. Ct. App. 1999) ("Rather, looking at the evidence in a light most favorable to the verdict, as we must, the victim's testimony is consistent in establishing that *although Brown was unable to maintain an erection* . . . , there was at least some penetration of her vagina by his penis.") (emphasis added).

¶29. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence at trial for reasonable, fair-minded jurors to find the State proved penetration beyond a reasonable doubt. Therefore, Bishop's assignment of error on this point lacks merit.

### B. Weight of the Evidence

¶30. Alternatively, Bishop asserts that the verdict was against the overwhelming weight of the evidence. We disagree.

¶31. When reviewing the denial of a motion for a new trial, we weigh the evidence in the light most favorable to the verdict and "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lenoir*, 222 So. 3d at 278 (¶20). "It is the role—and the responsibility—of the jury to weigh witness testimony and determine its credibility. . . . Where the evidence justifies a verdict, it must be accepted as having been found worthy of

11

belief." *Toliver v. State*, 271 So. 3d 513, 517 (¶14) (Miss. Ct. App. 2018) (internal quotation marks omitted) (mandate issued on Nov. 20, 2018); *see also Edwards v. State*, 797 So. 2d 1049, 1058 (¶26) (Miss. Ct. App. 2001) ("It is the jury's role to weigh the credibility of the evidence and decide which facts are accepted or rejected.").

¶32. We "will not substitute our factual findings for that of the jury in a contest of credibility." *Roberson v. State*, 19 So. 3d 95, 105 (¶25) (Miss. Ct. App. 2009). Here, the jury weighed the conflicting testimony and determined Alice's testimony to be more credible than that of the Bishops. The jury was also presented with circumstantial evidence substantiating the abuse allegations. Thus, the jury's verdict was not against the overwhelming weight of the evidence, and it would not sanction an unconscionable injustice to uphold the jury's verdict. We find no merit to this issue.

> **II. The trial court did not abuse its discretion in limiting the cross-examination of Brenda's mother regarding prior bad acts.**

¶33. Bishop next contends that he is entitled to a new trial on Counts VI and VII because his Sixth Amendment right to confront the witnesses against him was violated. Bishop asserts that the trial court limited his ability to cross-examine Brenda's mother about two prior bad acts—a pending fraud charge and a non-adjudicated embezzlement charge to which Brenda's mother pled guilty. According to Bishop, the State's ability to extend leniency in exchange for corroborative testimony renders these charges ripe for cross-examination. We disagree.

¶34. Generally, Mississippi affords "wide-open cross-examination" as to all relevant matters, including the possible interest, bias, or prejudice of a witness. *Meeks v. State*, 604

So. 2d 748, 755 (Miss. 1992) (citing M.R.E. 611(b)[5] and additional authority). But a trial court may limit cross-examination so long as its discretion in excluding evidence is not abused. *Collier v. State*, 183 So. 3d 885, 889-90 (¶18) (Miss. 2016). Abuse of discretion is "found only where the defendant shows clear prejudice from undue restraint on the defense." *Id*. at 890 (¶18). "When a trial court rules so as to prevent certain testimony from being introduced, it is incumbent on the party to make a proffer of what the witness would have testified to or the point is waived for appellate review." *Donelson v. State*, 158 So. 3d 1154, 1164 (¶53) (Miss. Ct. App. 2014).

¶35. Here, Bishop did not make a proffer as to Brenda's mother's unrelated charges; therefore, he failed to preserve this error for appellate review. Regardless, the trial court did not abuse his discretion by limiting Bishop's ability to cross-examine Brenda's mother about her pending fraud charge and her non-adjudicated embezzlement charge to which she pled guilty. While "wide-open cross-examination" is a venerable feature of our adversarial system of justice, Rule 611(b) does not operate unfettered from other applicable rules of evidence. *See Holliday v. State*, 758 So. 2d 1078, 1082 (¶12) (Miss. Ct. App. 2000) ("The right of cross-examination has been limited only [in] clear cases of irrelevancy, trespass beyond admissible grounds, or extremes of continual aimless repetition.").

¶36. Rule 609(a) of the Mississippi Rules of Evidence applies when attacking a witness's character for truthfulness with evidence of a criminal *conviction*. Bishop's assertion that the trial judge improperly limited his ability to cross-examine Brenda's mother about a *pending*

---

[5] Rule 611(b) provides that "[t]he court may not limit cross-examination to the subject matter of the direct examination and matters affecting the witness's credibility."

13

fraud charge in Attala County and a *non-adjudicated* embezzlement charge is belied by the plain language of this rule. Recognizing Rule 609, the trial judge made the following statements with regard to the pending fraud charge: (1) "A prior conviction is admissible, but I'm not aware of any rule that says a pending charge is"; and (2) "[A]n indictment is not an indication of guilt. She's got the presumption of innocence. And so I think it would be improper to get into that." Further, after Bishop's counsel began questioning Brenda's mother about the non-adjudicated embezzlement charge, the circuit court admonished counsel:

> Now, you absolutely know that a conviction is the only thing that you can ask about. If it was non-adjudicated and the case is dismissed, that is not a conviction. And the only thing that the rules provide for on a crime of dishonesty is if they have been convicted. Now, you know the rules better than that. I do not like you playing fast and loose with the rules of evidence . . . so ladies and gentlemen [of the jury], you are to disregard that entire line of questioning.

¶37. The trial judge did not err in his application of Rule 609(a), and his limitation of Bishop's cross-examination in this regard did not run afoul of Rule 611(b). Hence, the trial court did not abuse its discretion in limiting the cross-examination of Brenda's mother, and Bishop suffered no prejudice as a result of the limitation.

### III. The trial court did not abuse its discretion by sustaining the State's objection to a line of questioning regarding past abuse.

¶38. In his third assignment of error, Bishop similarly attacks his Count VI and Count VII convictions, contending that the trial court improperly limited his cross-examination of Brenda's mother such that he was denied the opportunity to "establish a factual basis for the defense that someone else might have abused Brenda." Again, we disagree.

14

¶39.   During direct examination, Brenda testified that no one other than Bishop had inappropriately touched her at any time.  On cross-examination, Bishop never inquired into whether any other person had molested Brenda, nor did Bishop ask whether Brenda had mistaken Bishop for another person who had previously abused her.

¶40.   But during cross-examination of Brenda's mother, Bishop inquired whether Brenda's mother had ever been sexually assaulted.  Brenda's mother, in the presence of the jury, admitted that she had told her psychiatrist (and only her psychiatrist) that she had previously been molested by her stepfather.  Bishop then asked Brenda's mother if her stepfather had been around Brenda between 2015 and 2016.  The State objected to the relevance of the question, and the trial court sustained the objection.  Bishop then requested to make a proffer.

¶41.   During the proffer, Brenda's mother reiterated that the only person who knew that her stepfather molested her was her psychiatrist.  Brenda's mother also stated that her stepfather had been around Brenda in 2015 and 2016 but added that "[h]e was never alone with my child at any given time."  Lastly, Brenda's mother testified that she had never represented to anyone that Brenda had been previously abused by a family member.  Bishop then closed the proffer, and, after the trial judge expressed concern as to the relevancy and admissibility of the evidence, Bishop sought to introduce the testimony of Beverly Hoskins, a family friend of the Bishops.

¶42.   After the jury returned, Bishop asked Brenda's mother if she had "ever made a statement to Hoskins saying that [Brenda] had been molested when she was a child . . . ."  Brenda's mother stated that she had not, and Bishop discontinued the line of questioning

15

until Hoskins was called as a witness. On direct examination, Hoskins testified that Brenda's mother told her that a family member had "messed with" Brenda; however, on cross-examination, Hoskins was unable to clarify what Brenda's mother meant or to provide any further detail as to her alleged conversation with Brenda's mother.

¶43. Ultimately, the trial court determined that the evidence Bishop sought to introduce "has nothing to do with the issue at hand in this case." Specifically, the trial judge stated, "I don't see how the fact that [Brenda] may have been around somebody that [Brenda's mother] claims molested her has anything to do . . . with whether [Bishop] molested her daughter . . . ." We agree.

¶44. While evidence supporting a defense theory that another person, not Bishop, had molested Brenda would be relevant, the proffered testimony of Brenda's mother clearly foreclosed any such theory. *See* M.R.E. 402. We therefore find that the trial court did not abuse its discretion in limiting the cross-examination of Brenda's mother, and Bishop suffered no prejudice as a result of the limitation. Bishop's assignment of error as to this point is without merit.

### IV. We decline to address Bishop's assertion that his trial counsel was ineffective on direct appeal.

¶45. Lastly, Bishop asserts that he received ineffective assistance of counsel. Specifically, Bishop asserts that his trial counsel was constitutionally ineffective for failing to request general alibi defense instructions for Counts I–V and Count VII, and a specific alibi defense instruction with regard to Count VI.

¶46. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought

16

during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016). This Court will "only consider an ineffective-assistance-of-counsel claim on direct appeal when: (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Nelson v. State*, 222 So. 3d 318, 322 (¶5) (Miss. Ct. App. 2017) (internal quotation marks omitted).

¶47. Here, the record does not affirmatively show ineffectiveness of constitutional dimensions. And, although the parties stipulate that the record is adequate, we find Bishop's ineffective-assistance-of-counsel claim is based on facts not fully apparent from the record, including facts related to his counsel's trial strategy and tactics. Accordingly, we decline to address the claim on direct appeal but preserve Bishop's right to pursue his claim through a petition for post-conviction collateral relief.

## CONCLUSION

¶48. After a thorough review of the record, we find that the trial court properly denied Bishop's post-trial motion. The State presented sufficient evidence for Bishop's statutory rape conviction, and the jury's verdict was not against the overwhelming weight of the evidence. Likewise, the trial court did not abuse its discretion in limiting the cross-examination of Brenda's mother, and Bishop suffered no prejudice as a result of the proper limitations. With regard to Bishop's ineffective-assistance-of-counsel claim, we preserve Bishop's right to pursue his claim through a petition for post-conviction collateral relief. As such, we affirm.

17

¶49.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**