# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00087-SCT

*LARRY COLLIER a/k/a LARRY OMAR COLLIER*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2013 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | A. RANDALL HARRIS |
| | DEWEY K. ARTHUR |
| | JOEY W. MAYES |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LARRY D. COLLIER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/04/2016 |
| MOTION FOR REHEARING FILED: | 05/05/2015 |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.	The motion for rehearing is denied.  The previous opinion is withdrawn and this opinion is substituted therefor.

¶2.	In prosecuting Larry Collier for selling controlled substances, the State called a seasoned felon-turned-confidential-police-informant who provided untruthful testimony about previous criminal convictions, and whom the trial court refused to allow the defendant

to cross-examine fully about those prior criminal convictions. Although the trial court erred in limiting the cross-examination, we find that, in light of the overwhelming evidence of guilt, the error was harmless. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3.     A Rankin County grand jury indicted Larry Collier on four counts of selling cocaine, and as a subsequent drug offender.[1]  At trial, Rankin County Investigator Barry Vaughn testified that Shirley Melvin, a confidential informant and the State's star witness, decided to go undercover for the Rankin County Sheriff's Department after she was arrested for selling cocaine. Vaughn had agreed to let Melvin "work off her charges" so she could avoid going back to jail. While working off her charges, Melvin set up several drug buys with Collier under Vaughn's supervision.

¶4.     Before allowing Melvin to buy drugs from Collier, Vaughn gave Melvin money, searched her clothing, outfitted her with audio and video surveillance equipment to record the transactions, and then searched her car's interior. Vaughn conceded on cross-examination that Melvin could have hidden cocaine in places on her body or in her car that were never searched, and that the sheriff's office did not have drug-sniffing dogs, so Melvin could have hidden drugs in her car that might not have been discovered.

¶5.     As soon as Melvin took the stand, the State questioned her about her past, including her prior convictions. When the State asked her what her prior convictions were, and how many prior convictions she had, she replied that she had prior convictions for "forgery and

_____

[1] Collier had a prior, May 1994, conviction for selling cocaine.

sales." When specifically asked how many forgery convictions she had, Melvin said she had five forgery convictions dating back to 2001, which she characterized as being for "bad checks." And when asked if she had another felony conviction, Melvin said she had a felony conviction sometime around 2000 for selling crack cocaine. Finally, Melvin told the jury that she was again arrested for selling crack cocaine in 2010—the arrest that had inspired her to work as a confidential informant.

¶6. Melvin then testified that she had bought drugs from Collier on three separate occasions: May 11, July 13, and October 25, 2012. She testified that she would call Collier and ask him if he was doing any business. And if he was, Melvin would then go to Collier's trailer on Shady Lane. Once a deal was set up, Melvin would go to the Rankin County Sheriff's Department and meet with Investigator Vaughn. Melvin explained that, before she left for a sale, the sheriff's department officers would search her clothing, wire her with audio and visual equipment, and search her car.

¶7. According to Melvin, the actual transactions were quick affairs. She would drive to Collier's trailer in her car, get out, go in, buy crack cocaine, give Collier money, get back in her car, and then leave. Melvin always returned after a buy to the sheriff's department, where she would give Vaughn the drugs she had just purchased from Collier. Sheriff's department officers also would search Melvin again for good measure.

¶8. During Melvin's direct testimony, the State introduced the video recordings into evidence. The parties agreed to begin playing the video "approximately a minute before" Melvin arrived at Collier's trailer and stop the video once she left.

3

¶9.	In the video showing the May 11 meeting, Melvin arrived at Collier's trailer and went inside the front room, where a transaction of some kind appeared to take place. Collier could be seen holding a small bag that he appeared to give Melvin. Melvin then left. Likewise, in the video showing the July 13 transaction, Melvin arrived at and entered Collier's trailer where Collier again appeared to hand something to Melvin. In the video depicting the October 25 transaction, Melvin drove up to Collier's trailer but did not go inside. Collier and Melvin instead met in the yard, and Melvin could be seen counting out ten-dollar bills and handing them to Collier. Collier then handed something to Melvin.

¶10.	On cross-examination, the defense attempted to impeach Melvin for her failure to disclose three other convictions: a 1975 grand-larceny conviction and two other 1977 forgery convictions. The State objected, and, outside the hearing of the jury, argued that Mississippi Rule of Evidence 609 and this Court's decision in *Johnson v. State*[2] precluded the defense from impeaching Melvin with prior convictions older than ten years, and that, in any event, the defense was barred from impeaching with the prior convictions for failure to provide the State with advanced written notice as required by Rule 609.

¶11.	Collier argued that he wanted to question Melvin about her prior convictions so he could impeach her testimony and show she had lied, and that Melvin had "opened the door to [impeachment with her prior convictions] by not providing the jury with her full record." The defense also wanted to introduce into evidence Melvin's "guilty-plea petitions" from other convictions in which she also had failed to disclose her entire criminal record.

---

[2] *Johnson v. State*, 529 So. 2d 577 (Miss. 1988).

¶12. Before making his ruling, the judge questioned Melvin about the convictions she had omitted during her direct examination. Melvin claimed she did not remember what she had been convicted of during the 1970s or when she was actually convicted, and that she "thought it was in the early "[']80s, but [the defense attorney said] it was in '75," and that she did not remember.

¶13. The trial judge ultimately prohibited Collier from asking about Melvin's other convictions based on Rule 609(b)'s requirement that a party provide advanced written notice if seeking to impeach a witness with a conviction more than ten years old. In making his ruling, the trial judge analyzed the issue as follows:

> Now, Mr. Harris [Collier's attorney], you want to come around [Rule 609's requirements] by arguing that, because [Melvin] didn't answer in a way that you believe was truthful, you ought to, because of that, now be able to impeach that answer given during the course of her testimony. And that under that situation, 609, the timeline relative to 609(b) is not applicable. I don't see any authority that provides that. And I don't have to do a balancing test if it were applicable, because it's a crime of falsity. But I do believe that at some point, it becomes cumulative in nature in the sense of, you know, whether she's had five convictions or seven convictions, I'm not sure is that—is that probative on the issues before the jury. She's admitted that she has five forgery convictions, has she not?
> . . .
> But I guess what I'm saying is, is that even if you missed giving the notice, it appears that the rule requires in [*Johnson*] *v. State*, 529 So. 2d 577, requires that testimony, I believe, of two or three more convictions now seems like it's two more convictions would be cumulative, and therefore not probative on the issues before the [c]ourt. She's been impeached with five or six convictions, and I don't think one or two more really is going to make much difference, so the State's objection will be sustained.

However, the trial judge did allow the defense to "develop the testimony that [Melvin's forgeries] [we]re not just false pretense, bad-check type forgeries."

¶14.    When court resumed, the defense hammered Melvin about her forgery convictions and how the forgeries had involved more than just writing bad checks.  The defense pointed out that Melvin's forgery convictions had involved "forging someone else's name to an instrument like a blank check . . . ."  The defense also pointed out that Melvin had been facing habitual-offender status when she had agreed to work off her charges.  However, the defense was not allowed to impeach Melvin about the other three 1970s-era convictions she had failed to disclose during direct examination or admit the guilty-plea petitions in evidence.

¶15.    Following Melvin's testimony, the State called two expert witnesses from the Mississippi Crime Laboratory who both testified that the substance Collier allegedly sold was cocaine.  The State then rested its case.  After making an unsuccessful motion to dismiss, the defense also rested its case.

¶16.    The jury ultimately found Collier guilty on all counts.  Collier moved for a new trial, which was denied.  The trial judge then sentenced him to forty years on the first two counts and one day on the third count, with sentences to run consecutively.  After sentencing, Collier appealed to this Court.

## ANALYSIS

¶17.    On appeal, Collier raises three issues.  The first is that the trial court's refusal to let him cross-examine Melvin about her other convictions violated his rights under the Confrontation Clause.  Second, he argues that the trial court erred in refusing to let the defense introduce Melvin's "guilty plea petitions" in evidence.  And, third, he says that the jury's guilty verdict was against the overwhelming weight of the evidence.  Because Collier's

first and second issues go to the trial court's rulings concerning Melvin's prior criminal history, we combine them for analysis.

### I. The trial court's error in prohibiting Collier from cross-examining Melvin about her undisclosed criminal convictions was harmless.

¶18.   We review a trial court's decision to limit cross-examination for abuse of discretion.[3] Under this standard, "[a]n abuse of discretion will be found only where the defendant shows clear prejudice from undue restraint on the defense."[4]

¶19.   Collier argues that the trial court's refusal to let him cross-examine Melvin about her other three convictions violated the Confrontation Clause and constituted reversible error, and that the trial court should have allowed him to introduce Melvin's guilty-plea petitions into evidence.  The State counters that Rule 609 excludes for impeachment purposes the use of convictions that are more than ten years old, and that, in any event, written notice that a party intends to impeach using a prior conviction must be provided before trial.  So the issues are whether impeaching a witness who lied about her criminal history is controlled by Rule 609, and if not, whether the trial judge committed reversible error when the judge denied the defense the opportunity to impeach the witness's false testimony.

### A. Rule 609 does not apply when a witness lies about her criminal record.

¶20.   Rule 609, which allows a witness's character for truthfulness to be attacked with evidence of prior convictions, does not allow a "conviction under this rule" to be used

---

[3] *Cage v. State*, 149 So. 3d 1038, 1044 (Miss. 2014) (citing *Jefferson v. State*, 818 So. 2d 1099, 1109 (Miss. 2002)).

[4] *Cage*, 149 So. 3d at 1044 (citing *Davis v. State*, 684 So. 2d 643, 652 (Miss. 1996)).

if a period of more than ten years has elapsed since the date of the convictions or of the release of the witness from the confinement . . . unless the court determines . . . the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect.[5]

And even where a trial court finds the old conviction probative, it cannot be used "unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."[6] This Court has held that "[b]y the express terms of the rule, a criminal defendant is not exempt from the requirement of appropriate notice."[7]

¶21.     But Rule 609—by its very terms—has no application when a witness lies on the witness stand.  Rule 609 allows an attack on a witness's general character for truthfulness, which essentially is an assertion that the witness has the propensity to lie.  An attack on a witness's general character for truthfulness is not the same as an attack on the truthfulness of specific testimony.[8]  Impeachment of specific testimony simply is outside the purview of Rule 609, including its advance-written-notice requirements.

---

[5] M.R.E. 609(b).

[6] *Id.*

[7] ***Johnson***, 529 So. 2d at 587.  *See also **Weeks v. State***, 804 So. 2d 980, 997 (Miss. 2001) ("Furthermore, M.R.E. 609(b) clearly states that in order for evidence of a prior conviction that is more than ten years old, as calculated in the rule, to be admissible, the proponent must give the opposing party *advanced written notice*.").

[8] *See* 1 Michael H. Graham, *Winning Evidence Arguments: Advanced Evidence for the Trial Attorney* 1001 (2006) ("Use of a prior conviction for other purposes, such as showing bias or interest, falls outside the scope of Rule 609.").

¶22. During direct examination, the State asked Melvin how many criminal convictions she had, and she said she had only five criminal convictions dating back to 2001. In reality, Melvin had eight criminal convictions dating back to the 1970s. While, under Rule 609, Melvin's three other convictions from the 1970s would have been inadmissible to attack her general character for truthfulness, they clearly were admissible to impeach Melvin's inaccurate testimony about her criminal history.

¶23. Had the State asked Melvin to disclose all of her criminal convictions during the last ten years, this issue would not be before us. But the State chose to ask Melvin about all her convictions, even those barred by Rule 609. This was a calculated decision by the State to establish Melvin's credibility, and when Melvin did not accurately respond to the State's questioning, she opened the door to impeachment with the other convictions she failed to disclose. And once Melvin opened the door, the jury had a right to know that Melvin had provided inaccurate testimony. We therefore find that the trial judge committed error by refusing to allow Collier's counsel to cross-examine Melvin on all of her convictions.

¶24. Collier also argues that the trial court erred in refusing to allow him to introduce Melvin's "guilty plea petitions" into evidence. Collier argued that in Melvin's guilty plea petition she also failed to disclose her 1970s-era convictions and that she elaborated on the nature of her 2000s-era forgery conviction. In denying the request, the trial judge said the pleas were inadmissable because the 1970s-era convictions also were inadmissible. Collier argues that, because these convictions were admissible as impeachment evidence, the trial

9

judge should have let him introduce the guilty-plea petition as a prior inconsistent statement under Rule 613(b).

¶25.    Although we agree that Collier should have been allowed to impeach Melvin with her prior convictions when she did not provide accurate testimony about her criminal history, an advance ruling on the admissibility of the guilty-plea petition was premature.  Rule 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible *unless* the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interest of justice otherwise require."[9]  And "[o]ur precedent is clear that, while a prior inconsistent statement of a testifying witness can be used to impeach the witness's credibility, it is not admissible as substantive evidence . . . ."[10]

¶26.    When Collier sought to introduce Melvin's guilty-plea petition, Melvin had not been cross-examined about her inconsistent criminal history.  Until Melvin testified one way or the other, her guilty-plea petitions could not be used for impeachment purposes.  And even if they could be used for such purposes, the guilty-plea petitions would not have qualified as "prior inconsistent statements" because the record indicates that Melvin also failed to disclose her prior convictions in the guilty-plea petitions, and the petitions would have been consistent with her untruthful testimony.  We also point out that the guilty-plea petitions

---

[9] M.R.E. 613(b) (emphasis added).

[10] ***Smith v. State***, 25 So. 3d 264, 271 (Miss. 2009).

could not have been admitted as substantive evidence.[11] So we agree with the trial judge's decision to exclude the guilty-plea petitions, but for different reasons.

¶27.    Because we find that the trial judge erred in analyzing the issue in this case under Rule 609 and that he abused his discretion in sustaining the State's objection, we next consider whether this error constituted reversible error.

### B.    The trial court committed harmless error when it prohibited Collier from cross-examining Melvin about her other criminal convictions.

¶28.    We review errors involving the trial court's admission or exclusion of evidence under a harmless-error analysis.[12]

> Harmless-error analysis prevents "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We do not reverse a conviction for an erroneous evidentiary ruling unless "the error adversely affects a substantial right of a party," or in other words, unless the ruling prejudiced the accused. Thus, where it is "clear beyond a reasonable doubt that the error did not contribute to the verdict," we need not reverse the conviction.[13]

¶29.    In *Anthony v. State*, this Court found reversible error when a trial court refused to let a criminal defendant cross-examine an undercover informant about a seventeen-year-old criminal conviction and other charges the informant was actively "working off."[14] The Court found "the favorable treatment [the informant] received on his prior charges in exchange for

---

[11]*Smith*, 25 So. 3d at 27l.

[12] *Smith v. State*, 136 So. 3d 424, 435 (Miss. 2014) (citing *Young v. State*, 99 So. 3d 159, 165 (Miss. 2012)).

[13] *Smith*, 136 So. 3d at 435 (internal citations omitted).

[14] *Anthony v. State*, 108 So. 3d 394, 398 (Miss. 2013).

his testimony was a material point that affected [the informant's] credibility as a witness."[15] And "[i]n limiting [the defendant's] cross-examination of [the informant], the trial court denied [the defendant] the opportunity to fully challenge [the informant's] credibility."[16]

¶30.   This error was made worse because "the State's case relied heavily on [the informant's] testimony."[17]  Even though the State introduced video evidence, the video evidence did not clearly show drugs changing hands.[18] So "the reliability of [the informant's] testimony was crucial," and the trial court's error in limiting the scope of the defendant's cross-examination constituted reversible error.[19]

¶31.   Although there are similarities between this case and *Anthony*, we find that the trial judge's error in this case was harmless.  Unlike the jury in *Anthony*, the jury in this case already had learned that Melvin was a seasoned felon.  The trial judge also allowed Collier to impeach Melvin's testimony about her convictions for "bad checks" and point out that this testimony was misleading.

¶32.   Also, the three videos in this case clearly show that Collier exchanged packages of some substance for money. Melvin brought the substances to law-enforcement officials, and the substances tested positive for controlled substances. To question Collier's testimony, one would have to believe that Collier sold Melvin something other than the controlled

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

substances, and that Melvin then hid or destroyed what she bought from Collier and then retrieved hidden drugs to provide to police. Collier produced no evidence to support this speculation.

¶33. Because Melvin's credibility already had been tarnished, and because of the substantial evidence that established the three transactions as drug sales, and in the absence of any evidence to the contrary, we fail to see how the disclosure of three more convictions would have had made any difference. Therefore, under the facts of this case, we find that the trial judge's decision to prevent Collier's attorney from cross-examining Melvin on the other three convictions was harmless.

## II. The jury's verdict was supported by sufficient evidence that Collier sold cocaine to Melvin.

¶34. Finally, Collier argues that the jury's verdict was against the overwhelming weight of the evidence. The standard for reversing a jury's verdict as against the overwhelming weight of the evidence is very high.[20] This Court views all the evidence, even evidence that does not support the State's case, "in the light most favorable to the *state*."[21] We will reverse only when "the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that a reasonable jury could not have found beyond a reasonable doubt that the defendant was guilty."[22] When a reasonable jury could not have found the

---

[20] *Moore v. State*, 151 So. 3d 200, 202 (Miss. 2014).

[21] *Griffin v. State*, 607 So. 2d 1197, 1201 (Miss. 1992) (citing *Burge v. State*, 472 So. 2d 392, 396 (Miss. 1985)) (emphasis added).

[22] *Moore*, 151 So. 3d at 202 (quoting *Young v. State*, 119 So. 3d 309, 315 (Miss. 2013)).

defendant guilty beyond a reasonable doubt, then "the verdict is 'so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice.'"[23]

¶35.   Collier argues that the jury's verdict was based on speculation and that the evidence was insufficient to prove that Collier sold cocaine to Melvin.  Collier notes that Melvin's testimony made the State's case and that the video of the transactions alone was insufficient. Collier further argues that Melvin was so desperate to stay out of jail that she framed Collier.

¶36.   When the evidence in this case is viewed in the light most favorable to the State, there is enough evidence for a reasonable jury to have found Collier guilty.  Melvin's testimony, along with the recordings—as unclear as they were—*could* have been sufficient for a reasonable juror to find Collier guilty of selling cocaine.  This issue is without merit.

## CONCLUSION

¶37.   To conclude, we affirm the jury's verdict in this case.  Although the trial court erred in refusing to let Collier cross-examine Melvin about the other criminal convictions she had failed to disclose during her direct examination, this error was harmless.

¶38.   **COUNT II: CONVICTION OF SALE OF COCAINE, AS A SUBSEQUENT DRUG OFFENDER, AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SALE OF COCAINE, AS A SUBSEQUENT DRUG OFFENDER, AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF SALE OF COCAINE, AS A SUBSEQUENT DRUG OFFENDER, AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. AS TO COUNT IV, AFTER APPELLANT HAS SERVED**

_____

[23] *Moore*, 151 So. 3d at 202 (quoting *Gilpatrick v. State*, 991 So. 2d 130, 134 (Miss. 2008)).

14

**A TERM OF ONE (1) DAY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THE APPELLANT SHALL BE RELEASED AND SERVE A TERM OF FIVE (5) YEARS ON POST RELEASE SUPERVISION, WITH CONDITIONS, UNDER THE DIRECT SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. APPELLANT SHALL PAY COURT COSTS, FEES AND ASSESSMENTS IN THE AMOUNT OF $2,456.50 WITHIN NINETY (90) DAYS RELEASE FROM CUSTODY. APPELLANT IS IMPOSED A FINE IN THE AMOUNT OF $10,000 IN COUNT II; A FINE IN THE AMOUNT OF $10,000 IN COUNT III; A FINE IN THE AMOUNT OF $10,000 IN COUNT IV, WITH PAYMENT OF SAID FINES SUSPENDED. THE SENTENCE IMPOSED IN COUNT III SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT II. THE SENTENCE IMPOSED IN COUNT IV SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT III. APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED IN PRETRIAL DETAINMENT.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, KING , COLEMAN AND MAXWELL, JJ., CONCUR.**