# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01509-SCT

*MICHAEL SHANTEZ WILLIS a/k/a MICHAEL WILLIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2018 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | MATT W. KITCHENS |
| | DANIEL W. KITCHENS |
| | ALEXANDER C. MARTIN |
| | M. LAMAR ARRINGTON, JR. |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MATT W. KITCHENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/09/2020 |
| MOTION FOR REHEARING FILED: | 06/08/2020; DENIED AND OPINION |
| | MODIFIED AT ¶2, ¶3 AND ¶4 - 08/27/2020 |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.  Michael Willis (Willis) appeals his conviction for aggravated assault. Counsel for his codefendant and nephew Kedarious Willis (Kedarious) filed a *Lindsey*[1] brief in our Court

---

[1] "*Lindsey v. State*, 939 So. 2d 743, 748 (Miss. 2005) (establishing the procedure to be used when 'appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]')." *Sanford v. State*,

of Appeals averring that there were no meritorious arguments for appeal. *See Willis v. State*, 282 So. 3d 1283 (Miss. Ct. App. 2019). After reviewing the errors Willis alleges, we find no merit to his arguments. Accordingly, we affirm the judgment of the Copiah County Circuit Court.

**FACTS**

¶2. On December 2, 2017, Travell Moore and Kedarious got into a fight at a Crystal Springs barbershop. The fight was precipitated by a claim that Travell had stolen a radio from Willis's car. After the fight broke up, Kedarious drove to his aunt's home. Subsequently, he and Willis drove to Kedarious's grandmother's home on Jordan Street.

¶3. Travell testified that he went to his brother-in-law's house on Jordan Street. Travell was playing dominoes outside surrounded by a large crowd of people by the time Kedarious and Willis drove by the house. Travell removed his shirt and went out in the street to confront Kedarious and Willis.

¶4. Testimony from Travell and other witnesses was divided over whether Willis then got out of the car and argued with Travell before they reached Kedarious's grandmother's home or if Travell followed them down to Kedarious's grandmother's home. Regardless, the confrontation between Travell and Willis was renewed in front of Kedarious's grandmother's home. Kedarious was standing nearby at his parked car.

¶5. Travell claimed that at some point he turned his back to Willis and then heard Willis say, "shoot, shoot." Travell tried to run but was struck by several bullets, falling at the next-

247 So. 3d 1242, 1243 n.1 (Miss. 2018).

2

door neighbor's driveway. Kedarious said he saw Travell pull the handle of a gun from his pocket. Kedarious claims he then pulled out his own weapon and started shooting wildly in fear for his life.

¶6.     Travell was taken to University of Mississippi Medical Center where he was treated for a collapsed lung and a lacerated liver. His spinal cord was severed, resulting in paralysis. Willis and Kedarious were indicted for aggravated assault and conspiracy. At trial, the defendants moved for a directed verdict on both counts, and the conspiracy count was dismissed. Before giving jury instructions, the State received a report that one juror had been in contact with Travell's twin brother. After examining the juror, the defense requested that she be removed from the jury. The State agreed, and the alternate was seated.

¶7.     The jury found both defendants guilty of aggravated assault. Willis was sentenced to twenty years in prison as a habitual offender. Willis now appeals.

**ISSUES PRESENTED**

¶8.     A series of issues is presented on appeal:

I.      Did the trial court abuse its discretion by barring reference to Travell's earlier conviction and the frequency of his drug use?

II.     Did the trial court improperly rule Travell's medical records inadmissible?

III.    Did the trial court abuse its discretion by allowing the State to present Jenica Powell as a rebuttal witness?

IV.     Did the trial court improperly prevent Willis from referencing the trial court's ruling dismissing the conspiracy count in Willis's closing argument?

V.      Was the evidence legally sufficient to support Willis's conviction for

3

aggravated assault?

VI.   Did the trial court err by not granting Willis's motion for a new trial in light of the alleged contact between a juror and the victim's twin brother?

VII.  Was Willis's twenty-year sentence as a habitual offender for aiding or abetting commission of aggravated assault excessive, unreasonable, cruel and unusual, or grossly disproportionate?

VIII. Miscellaneous arguments

## ANALYSIS

### I.   Did the trial court abuse its discretion by barring reference to Travell's earlier conviction and the frequency of his drug use?

¶9.   Willis argues that the trial court improperly prevented him from utilizing three impeachment items: (1) facts related to Travell's 2015 felony conviction for breaking into a car; (2) Travell's frequency of drug use; and (3) questioning other witnesses regarding Travell's drug use. Willis fails to provide argument regarding (3), thus we decline to address it. "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Smith v. State*, 986 So. 2d 290, 295 (Miss. 2008) (citing *Jones v. State*, 962 So. 2d 1263, 1268 (Miss. 2007)). A court abuses its discretion by relying on an erroneous statement of the law or applying improper or erroneous facts. *Overton v. State*, 195 So. 3d 715, 725 (Miss. 2016) (quoting *Abuse of Discretion*, Black's Law Dictionary (10th ed. 2014)).

¶10.  At trial, the State asked Travell whether he had a criminal record. Travell equivocally responded that he had been to prison once for domestic abuse. The State later objected to Willis's questions regarding a separate 2015 felony conviction on relevance grounds.

4

Defense counsel responded, "[h]e went into it on direct. But it's relevant. The second [felony] is breaking into a car and stealing something, which is exactly what he's accused of doing. It shows his MO. It's one of the exceptions." After further colloquy with the trial judge, Willis's attorney argued,

> It tells a story, Judge, what got it started. That's what they were mad at each other about. He said they had a beef in opening because of this event, and I'm just pointing out that this is the man – he says he didn't do it. He just testified he didn't break into the car on direct. I'm saying, well, he has a prior conviction for doing the same thing.

Willis attempted to introduce facts related to a 2015 conviction as substantive evidence of Travell's propensity for committing a similar act, i.e., he breaks into cars and steals radios. Because that was the position advanced at the trial court, Willis cannot not now claim that the evidence was for impeachment of Travell's character for truthfulness. *Tate v. State*, 912 So. 2d 919, 928 (Miss. 2005) ("Issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal." (citing *Wilcher v. State*, 479 So. 2d 710, 712 (Miss. 1985))); *see also Smith*, 986 So. 2d at 295 ("This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." (citing *Montgomery v. State*, 891 So. 2d 179, 187 (Miss. 2004); *Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973))).

¶11. Further, the Mississippi Rules of Evidence provide, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Miss. R. Evid. 404(b)(1). Because the facts regarding a prior conviction were inadmissible for the purpose

5

declared, the trial judge cannot be said to have abused his discretion for ruling the evidence inadmissible.

¶12.     Next, Willis avers that the trial judge impermissibly restrained the scope of cross-examination. The State objected to a question posed by counsel representing Kedarious. Counsel asked, "Now, how frequently were you using drugs then?" The State requested to approach the bench, and the trial judge responded to the State with the word "sustain." Willis now argues that this ruling by the trial court reduced the efficacy of testimony from Kedarious's expert, Dr. Valentine. Dr. Valentine testified regarding the effect of cocaine and marijuana on chronic and occasional users and the likelihood that Travell had used cocaine or marijuana the day of the incident. This testimony directly contradicted Travell's earlier testimony that he had not used cocaine or marijuana the day of the incident.

¶13.     Dr. Valentine opined that Travell was experiencing the effects of cocaine and marijuana at the time of the incident. He testified about what that could do to Travell's state of mind. The trial court's unrelated ruling did not limit the scope of the evidence Willis and Kedarious introduced. If there was any error at all, it was harmless. *See **Conners v. State***, 92 So. 3d 676, 684 (Miss. 2012) (stating that harmless errors are errors that are not important or not significant when considering the context of the case and its result). Therefore, there was no abuse of discretion.

**II.     Did the trial court improperly rule Travell's medical records inadmissible?**

¶14.     Willis next argues that the trial court improperly ruled Travell's medical records inadmissible and improperly restricted the defense's ability to reference the records in

questioning witnesses. The State argues that the trial court properly ruled the records inadmissible because they were not certified in accordance with Mississippi Rules of Evidence 803(6) and 902(11). Willis does not dispute this. Willis instead complains that the State should have had the records certified since the State was forced to subpoena them by the trial court and that Willis should not have been penalized by the court's refusal to admit the records.

¶15.    On July 16, 2018, Willis's counsel stated that he had possession of the medical records but that they were not certified. In preparing for voir dire on July 23, 2018, the court learned that the medical records were not certified and continued the trial. It was not until August 7, 2018, *after* the State had finished its case-in-chief, that Willis's counsel again complained about the records' not being admitted. The trial court replied, "[c]ounsel, if you recall, we were in court a week ago, and I don't know how I could have been any clearer in explaining that if you can qualify those records under the medical records exception to the hearsay rule, I'll admit them, and apparently nobody has done that."

¶16.    Willis offers numerous reasons for the admission of the records in this appeal. But none were raised in the trial court. He cannot challenge that now. *Tate*, 912 So. 2d at 928; *see also Smith*, 986 So. 2d at 295 (citing *Montgomery*, 891 So. 2d at 187; *Stringer*, 279 So. 2d at 158). We again decline to find the trial court abused its discretion.

### III.    Did the trial court abuse its discretion by allowing the State to present Jenica Powell as a rebuttal witness?

¶17.    Willis's third argument is that the State improperly presented substantive evidence in rebuttal. The State called two rebuttal witnesses, Jeremy Moore and Jenica Powell. Willis

claims that allowing Powell to testify constituted error. Powell testified that Willis told Kedarious to shoot Travell.

¶18.     The State is obligated to "present all relevant evidence bearing upon [the defendant's] guilt as part of its case in chief, not initially through cross-examination of the defendant and his witnesses, and then offering evidence of such conduct in rebuttal." *Hosford v. State*, 525 So. 2d 789, 791 (Miss. 1988). The State is permitted to present rebuttal testimony though in order to "explain, repel, counteract or disprove" evidence offered by the defense. *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989). Whether or not testimony should have been presented in the case-in-chief or rebuttal is not always clear, and when there are ambiguities, "the trial judge must be given due discretion, especially when the defendant is permitted surrebuttal." *Gilmore v. State*, 119 So. 3d 278, 292 (Miss. 2013) (internal quotation marks omitted) (quoting *McGaughy v. State*, 742 So. 2d 1091, 1094 (Miss. 1999)).

¶19.     We have identified three factors to examine to determine if it is permissible for the disputed testimony to be offered in rebuttal rather than in the case-in-chief: (1) whether the reception of the testimony will not consume so much time that it will be necessarily given undue weight; (2) whether the opposing party would have been as well prepared to meet the testimony in surrebuttal as if it had been offered in the case-in-chief; and (3) the opposite party on request is given an opportunity to reply in surrebuttal. *Id.* (quoting *Roney v. State*, 167 Miss. 827, 150 So. 774, 775–76 (1933)).

¶20.     Willis claims that Powell's testimony was "not necessary to rebut or explain any evidence first offered by the defense after the State rested." Willis claims that this testimony

8

was just further substantive evidence offered against Willis that did not refute anything to which the defense witnesses had testified. But Willis exposes in his argument exactly what Powell's testimony rebutted: testimony from numerous witnesses who stated that they did not hear Willis say anything. Such testimony qualifies as rebuttal.

¶21. Powell's direct and redirect testimony consumes only a page and a half, certainly not an undue amount of time. Additionally, Willis's extended cross-examination belies any claim he was unprepared to challenge her. Rather than addressing the factors to be examined on review, Willis argues that there was no legitimate reason for Powell's testimony not to have been presented in the case-in-chief. Powell's testimony was presented to discredit testimony offered by the witnesses for the defense. The trial court did not abuse its discretion in allowing it on rebuttal.

### IV. Willis fails to provide legal support for his argument regarding references to the conspiracy count in closing arguments.

¶22. Willis additionally argues that the trial court improperly prevented him from referencing in closing argument the trial court's dismissal of the conspiracy count. Willis provides no legal support for this argument beyond referencing that parties may comment on an opposite party's opening statement in conclusion, *Taylor v. State*, 672 So. 2d 1246, 1269 (Miss. 1996), and an exposition of a Court of Appeals case noting that an acquittal on conspiracy does not necessarily mean one cannot be convicted of aiding and abetting. *Peel v. State*, 283 So. 3d 203 (Miss. Ct. App. 2019). We are unconvinced that Willis has successfully alleged error, but assuming arguendo there was error, it was harmless. *See Conners*, 92 So. 3d at 684 (stating that harmless errors are errors that are not important or

9

not significant when considering the context of the case and its result). Therefore, there was no abuse of discretion.

### V.    Was the evidence legally sufficient to support Willis's conviction for aggravated assault?

¶23.    Next, Willis challenges whether the evidence presented was legally sufficient to support the verdict. In cases challenging the sufficiency of the evidence "we view the evidence in a light most favorable to the State." *Lenoir v. State*, 222 So. 3d 273, 279 (Miss. 2017) (citing *Poole v. State*, 46 So. 3d 290, 293 (Miss. 2010)). Further, the State receives all favorable inferences reasonably drawn from the facts. *Id.* (citing *Poole*, 46 So. 3d at 293). Finally, if a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the verdict. *Id.* (citing *Poole*, 46 So. 3d at 293). We will disturb the verdict "only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (Miss. 2017).

¶24.    Willis was convicted as a principal for committing aggravated assault. But Willis did not actually shoot Travell. In order to be convicted as a principal then he must either have aided or abetted his codefendant or have been an accessory before the fact. *Pace v. State*, 242 So. 3d 107, 119 (Miss. 2018) (quoting *Hoops v. State*, 681 So. 2d 521, 533 (Miss. 1996)); *see also* Miss. Code Ann. 97–1–3 (Rev. 2014). The difference between the two is that an aider or abettor, "is actually or constructively present at the offense," while an accessory before the fact is not. *Dilworth v. State*, 909 So. 2d 731, 734 (Miss. 2005) (quoting *Hooker v. State*, 716 So. 2d 1104, 1110 (Miss. 1998)).

10

¶25. To be convicted as an aider or abettor, in addition to being present, a defendant must aid, counsel, or encourage the person committing the crime. *Id.* (quoting *Swinford v. State*, 653 So. 2d 912, 915 (Miss. 1995)). The evidence showed that Willis aided, counseled, or encouraged Kedarious to commit the crime. Travell and Powell testified that Willis ordered Kedarious to shoot Travell. Willis argues there were other witnesses who testified either that they could not hear what Willis said or that Willis was silent. But "[w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Little*, 233 So. 3d at 289. Bearing this in mind, and taking the evidence in the light most favorable to the State, Powell and Travell provided sufficient evidence to allow the jury to find that Willis aided or abetted his codefendant in committing the crime.

¶26. Willis's arguments regarding credibility and other perceived faults of the witnesses are unavailing here. It is the sole province of the finder of fact to weigh credibility and discern between conflicting testimony. The evidence supporting the verdict was not legally insufficient. Willis's claim that the verdict was against the overwhelming weight of the evidence is unavailing for similar reasons.

> **VI. Did the trial court err by not granting Willis's motion for a new trial in light of the alleged contact between a juror and the victim's twin brother?**

¶27. Willis avers that because one of the jurors allegedly discussed the trial with the victim's twin brother, Willis should be granted a new trial. His motion for a new trial on these grounds was denied. We review the denial of a motion for a new trial for abuse of

11

discretion. *State v. Murphy*, 202 So. 3d 1243, 1259 (Miss. 2016) (citing *Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997)). Willis cites *Odom v. State*, 355 So. 2d 1381 (Miss. 1978), to support his argument that the trial court abused its discretion. But *Odom* stands for the proposition that when a motion for a new trial is properly made and denied, it may be reversible error. *Id.* at 1383. Here, Willis made a motion for a new trial after the conviction and sentencing hearing. Willis's argument that the trial court should have declared a mistrial upon the discovery of the juror's alleged illicit contact was made for the first time in this motion.

¶28.    Willis failed to make a motion for a mistrial when the juror's actions were discovered and the juror was dismissed. "[W]hen anything transpires during the trial that would tend to prejudice the rights of a defendant, he cannot wait and take his chances . . . he must ask the trial court for a mistrial upon the happening of such occurrence . . . as would entitle him to a mistrial." *Blackwell v. State*, 44 So. 2d 409, 410 (Miss. 1950). The record shows the defense did not object contemporaneously:

> The Court: Well, the juror denies it, so I'll do whatever counsel suggest. I will remove her or else I'll proceed with the alternate or else I will proceed with her.
>
> [Counsel for Kedarious]: Your honor, I would ask she be removed
>
> [Counsel for Willis]: It's fine for me for her to be removed. I just want to make sure there's not any others.
>
> [State]: The state is not going to object to whatever the defense wants, Your honor.

The juror was subsequently removed without further objection by Willis or the codefendant.

12

Willis's argument is procedurally barred, but we must note that Willis still received what he asked for from the trial court. The juror he complained of was removed before deliberations. We decline to find the trial court abused its discretion.

### VII. Was Willis's twenty-year sentence as a habitual offender for aiding or abetting commission of aggravated assault excessive, unreasonable, cruel and unusual, or grossly disproportionate?

¶29. Willis next argues that his sentence of twenty years was excessive, unreasonable, cruel and unusual, and grossly disproportionate. Our precedent dictates that the twenty-year maximum set by Mississippi Code Section 97–3–7(2)(a) (Rev. 2014) is neither cruel nor unusual. *See Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992). Our precedent further dictates that sentences will not be disturbed when they are within the limits prescribed by the statute, absent a very narrow exception. *Id.* This narrow exception requires the sentence to be "disproportionate to the crime charged." *Fleming*, 604 So. 2d at 302 (citing *Ashley v. State*, 538 So. 2d 1181, 1184–85 (Miss. 1989); *Davis v. State*, 510 So. 2d 794, 797 (Miss. 1987); *Presley v. State*, 474 So. 2d 612, 618 (Miss. 1985)).

¶30. Willis cites *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 3011, 77 L. Ed. 2d 637 (1983), and *Fleming* to argue that his sentence was constitutionally disproportionate.[2]

---

[2] This Court erred when it wrote that "*Solem*, however was overruled in *Harmelin v. Michigan*, 501 U.S. 957, 965–66, 111 S. Ct. 2680, 2686–87, 115 L. Ed. 2d 98 (1991), to the extent that it found a guarantee of proportionality in the Eighth Amendment." *Hoops*, 681 So. 2d at 538 (citing *Smallwood v. Johnson*, 73 F.3d 1343, 1346 n.4 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 315–16 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992)). The genesis of this inaccurate statement of the law appears to have been first articulated in 1996 quotation from an opinion of the United States Court of Appeals for the Fifth Circuit, which held that the Eighth Amendment contained no proportionality principle. This opinion relied on Justice Scalia's opinion in *Harmelin*, an opinion that ultimately did not fully carry the day. "The controlling opinion [in *Harmelin*]

But Willis goes astray by failing to address the threshold question of gross disproportionately mandated by Eighth Amendment jurisprudence. *Graham*, 560 U.S. at 59–60 (citing *Harmelin*, 501 U.S. at 99, 1000–01 (Kennedy, J., concurring in part and concurring in judgment)); *see also* *Rummel v. Estelle*, 445 U.S. 263, 276–75, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (stating that essential to the inquiry of proportionality is the actual comparison between the crime and the punishment); *Weems v. United States*, 217 U.S. 349, 366-67, 30 S. Ct. 544, 54 L. Ed. 793 (1910) (examining *cadena temporal* and relating the severity of the punishment to the crime committed).

¶31.    Willis's argument instead focuses not on a comparison between his offense and the sentence but rather on the credibility of the proof produced against him. He relies on denigration of witnesses and that the average sentence for aggravated assault in 2018 in Mississippi was twelve years. Willis argues that because his sentence of twenty years exceeds that average and that the witnesses against him were suspect, his sentence is grossly disproportionate. He minimizes his status as a habitual offender previously convicted of four felonies. Further he discounts the fact that he aided and abetted in the shooting and

concluded that the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between a crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Harmelin*, 501 U.S. at 997, 1000–01 (Kennedy, J., concurring in part and concurring in judgment)). To determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence. *Id.* Only in the exceedingly "rare case" where this comparison "'leads to an inference of gross disproportionality,' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id.* (quoting *Harmelin*, 501 U.S. at 997, 1000–01 (Kennedy, J., concurring in part and concurring in judgment)).

14

paralyzation of Travell. Finally, he ignores the reality that the twenty-year sentence was within statutory guidelines. A threshold comparison reveals that the sentence is not disproportionate to the crime committed.

### VIII.   Willis's miscellaneous arguments are unavailing.

¶32.    Finally, Willis appends three other complaints to his brief. First, he alleges that voir dire was unduly limited. But there is no evidence in the record that the defendant objected to how voir dire was conducted or that the trial court limited voir dire in any substantial way. Because this claim is unsupported in the record and Willis provides no support for his argument, we decline to address it. *See McNeese v. McNeese*, 119 So. 3d 264, 269 (Miss. 2013) (quoting *O.W.O. Invs., Inc. v. Stone Inv. Co.*, 32 So. 3d 439, 446 (Miss. 2010); *Touchstone v. Touchstone*, 682 So. 2d 374, 380 (Miss. 1996)).

¶33.    Next, Willis argues the trial court erred by not issuing a circumstantial evidence instruction. Absent a confession or eyewitness testimony, a defendant is entitled to a circumstantial evidence instruction. *Mack v. State*, 481 So. 2d 793, 795 (Miss. 1985). Here, direct evidence was presented. Thus, Willis's argument is ineffective. He was not entitled to a circumstantial-evidence instruction.

¶34.    Finally, Willis alleges the trial court improperly denied his motion for an appeal bond. But, as the State identifies and Willis concedes, the trial court never ruled on the motion. Therefore, it is not preserved for review *See Tate*, 912 So. 2d at 928.

### CONCLUSION

¶35.    Willis's alleged errors are without merit, and nothing indicates the trial court abused

its discretion. Therefore, we affirm the judgment of the Copiah County Circuit Court.

¶36. **AFFIRMED.**

**MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND CHAMBERLIN, JJ. KITCHENS, P.J., NOT PARTICIPATING.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶37. Because I disagree with the majority's analysis in Issue I, I concur in part and in result only.

**I.      Whether the trial court abused its discretion by refusing to allow cross-examination on Travell's earlier conviction.**

¶38. After the State asked Travell whether he had a criminal record, Travell responded with only a partial truth. When Willis sought to introduce the rest of the truth regarding Travell's second conviction, he first argued that he could cross-examine Travell regarding his second conviction because the State and Travell opened the door to the testimony on direct examination. Specifically, defense counsel argued that "He opened the door." The trial court responded, "Who did?" Defense counsel replied, "He asked all this on direct." The State explained that "I told them he was a convicted felon." And defense counsel replied, "He went into it on direct." On direct, the State had asked Travell, "do you have a criminal record?" Travell responded that "I been in jail one time. Me and my baby mama got into it." Secondarily, Willis then argued that testimony regarding the conviction was relevant as a modus operandi. Because Willis's first argument regarding the admissibility of the testimony was that the State and Travell opened the door, this Court should not dismiss his argument

16

outright simply because he made a second argument that the testimony was also relevant.

¶39. This Court has held that when the State and witness open the door to such testimony, the jury has a right to know if it is inaccurate. *Collier v. State*, 183 So. 3d 885, 891 (Miss. 2016). In *Collier*, the State asked witness Shirley Melvin to disclose all her criminal convictions, and she only disclosed five of her eight convictions. *Id.* at 890-91. On cross-examination, the defense attempted to ask Melvin about her prior convictions to show that she lied on direct examination and argued that Melvin and the State had opened the door to the testimony. *Id.* at 888. The trial court prohibited the testimony under Mississippi Rule of Evidence 609. *Id.* at 888-89. On appeal, this Court found that Rule 609 is inapplicable when a witness lies on the witness stand. *Id.* at 890. We found that the State asking about Melvin's criminal history "was a calculated decision by the State to establish Melvin's credibility[.]" *Id.* at 891. "[W]hen Melvin did not accurately respond to the State's questioning, she opened the door to impeachment with the other convictions she failed to disclose. And once Melvin opened the door, the jury had a right to know that Melvin had provided inaccurate testimony." *Id.* The Court therefore found that the trial court erred by failing to allow defense counsel to cross-examine Melvin about all of her convictions.

¶40. Similarly, the State asked Travell about the entirety of his criminal record, and Travell provided inaccurate testimony. Once Travell opened the door, the jury had a right to know that he had provided inaccurate testimony, and Willis should have been able to cross-examine him about the remainder of his criminal record. The State made a calculated decision to establish Travell's credibility, Travell provided inaccurate testimony, and the defense was

17

prohibited from illuminating that inaccurate testimony for the jury. The trial court therefore erred by refusing to allow defense counsel to cross-examine Travell regarding the entirety of his criminal record.

¶41. Based on the analysis in Section V of the majority, I do not believe this error rises to the level of reversible error. *See id.* at 892-93. I therefore concur in the result reached by the majority.

**COLEMAN AND CHAMBERLIN, JJ., JOIN THIS OPINION.**