# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-01173-SCT

*KEMOND JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/23/2022 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | MICHAEL R. BONNER |
| | TERRIS CATON HARRIS |
| | LIEM ANOVA WALKER |
| | RICHARD EARL SMITH, JR. |
| | GLENNARD MICHAEL WARREN, II |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TERRIS CATON HARRIS |
| | JEFFREY MATTHEW GRAVES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     A Warren county jury convicted Kemond Jones of murder. The trial court sentenced him to forty years, ten of which were suspended. The Warren County Circuit Court denied Jones's "Motion for Judgment Non Obstante Verdict, or in Alternative a New Trial." He now appeals from the denial, claiming that the trial court erred by allowing improper evidence and that the verdict was against the overwhelming weight of the evidence. We affirm the judgment of the trial court.

# FACTS

¶2.     On September 7, 2019, Kemond Jones shot Ethan Powell eight times with a 9 mm handgun. The incident transpired in the Beechwood Estates neighborhood in Warren County shortly after midnight.

¶3.     Warren County Sheriff's Department officers responded to a call about the shooting immediately after it occurred. When the first officers arrived at the scene, they saw Powell lying face down in the road. Emergency Medical Services administered emergency care at the scene and subsequently transported Powell to the River Region Medical Center. Despite their efforts, Powell died from his gunshot wounds later that same morning.

¶4.     The lead investigator for the sheriff's department, Samuel Winchester, arrived at the scene at approximately 1:30 a.m. He began an investigation that included taking photographs, interviewing witnesses, and collecting evidence. Investigator Winchester recovered nine shell casings from a 9 mm handgun. He also took photographs of the scene of the shooting and, later, the eight bullet wounds on Powell's body.

¶5.     Investigator Winchester was present while Sheriff Martin Pace conducted an interview with Danny Guice, a witness to the shooting. Guice identified Jones as the shooter, prompting Investigator Winchester to proceed to Jones's nearby residence, where he lived with his mother. He was not at home when Investigator Winchester arrived between five and six o'clock in the morning. Jones turned himself in to the sheriff's department later that afternoon.

¶6. At trial, Guice testified that he, Powell, and Jones were previously friends. However, a disagreement had arisen between Powell and Jones approximately one to two weeks prior to the shooting, which culminated in Jones slapping Powell. Guice testified that on the night of the shooting, he was at his aunt's neighbor's house buying marijuana while Powell waited beside the car on the street. Guice stated that upon exiting the house, he heard a loud slap and then observed Jones shooting Powell. He testified on cross-examination that there was only one gun at the scene—that Powell did not have a gun at the time of the shooting.

¶7. Dr. Mark LeVaughn was certified as an expert in forensic pathology and testified for the State. He confirmed that the gunshot wounds were the cause of death. Dr. LeVaughn further explained that at least three of the gunshot wounds were in Powell's back and that the injury on Powell's elbow indicated extreme fragmentation of the bullet, which is consistent with someone being shot while lying on the ground.

¶8. Jaevyan Hamlin testified for the defense. Hamlin claimed to have seen Powell slap Jones and approach him in an aggressive manner. Hamlin further testified that Guice approached the scene after Powell had been shot and removed an object resembling a purple and black gun. Under cross-examination, Hamlin testified that he knew Jones sometimes carried a gun.

¶9. Jones testified in his own defense. He claimed that Powell approached him that night, slapped him, and then reached for a gun. Jones admitted shooting Powell after being slapped. He also testified that he "just kept [a gun] sometimes. No specific reason."

¶10. During the prosecutor's opening statement at trial, while describing the anticipated testimony from Guice, the prosecutor said: "He knew Kemond Jones. Not only did he know Kemond Jones, he knew that even at fifteen years old Kemond Jones was known to pack a pistol." Jones's attorney timely objected, but the judge overruled the objection. After the opening statement concluded, Jones's attorney renewed his objection and asked for a mistrial, claiming that the statement had prejudiced the jury. He argued that the statement violated Rule 404(b) of the Mississippi Rules of Evidence.

¶11. While Guice was on direct examination, the prosecutor asked: "Had you ever seen Kemond Jones with a weapon prior to--." The defense again objected, but, unlike during the opening statement, the judge sustained the objection.

¶12. The trial court denied Jones's J.N.O.V. motion. He now appeals from the denial and raises the following two issues, which we repeat verbatim:

1. Whether Kemond Jones was denied a constitutionally fair and impartial trial by the Court's failure to filter other bad acts evidence through M.R.E. 403 and mitigate the impact of unfair surprise and improper bad act evidence.

2. Whether Kemond Jones was denied a constitutionally fair and impartial trial where the verdict is against the overwhelming weight of the evidence; the Court erred in denying Kemond Jones'[s] motion for judgment notwithstanding the verdict or, alternatively, a new trial under *Weathersby v. State.*

## STANDARD OF REVIEW

¶13. "The standard of review regarding admission or exclusion of evidence is abuse of discretion." *Mingo v. State*, 944 So. 2d 18, 28 (¶ 27) (Miss. 2006) (citing *Parks v. State*, 884 So. 2d 738, 742 (¶ 9) (Miss. 2004)). "Where error involves the admission or exclusion of

4

evidence, this Court 'will not reverse unless the error adversely affects a substantial right of a party.'" ***Whitten v. Cox***, 799 So. 2d 1, 13 (¶ 27) (Miss. 2000) (internal quotation mark omitted) (quoting ***Floyd v. City of Crystal Springs***, 749 So. 2d 110, 113 (¶ 12) (Miss. 1999)). "The Supreme Court will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion." ***Morgan v. State***, 703 So. 2d 832, 840 (Miss. 1997) (quoting ***Esparaza v. State***, 595 So. 2d 418, 426 (Miss. 1992)). "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." ***Slaughter v. State***, 815 So. 2d 1122, 1130 (¶ 45) (Miss. 2002) (citing ***Sheppard v. State***, 777 So. 2d 659, 660 (¶ 7) (Miss. 2000)).

## DISCUSSION

**I.    Whether the jury was improperly prejudiced by inadmissible evidence.**

¶14.    Jones argues on appeal that when the prosecutor said in his opening statement that "Jones was known to pack a pistol[,]" the jury was irreparably prejudiced.  He claims that the statement violated Rule 404(b) of the Mississippi Rules of Evidence.  Rule 404(b) states:

**(b) Crimes, Wrongs, or Other Acts.**

(1)    *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)    *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Miss. R. Evid. 404(b). Additionally, the Court has held that "evidence which is not necessary for the State to prove its case of capital murder . . . could be unduly prejudicial to a defendant. Thus, all such evidence under Rule 404(b) must be filtered through Rule 403." *Keller v. State*, 138 So. 3d 817, 855 (¶ 92) (Miss. 2014) (alteration in original) (quoting *Flowers v. State*, 773 So. 2d 309, 321 (¶ 36) (Miss. 2000)).

¶15. Jones's argument fails in three ways. First, opening statements are not evidence. *Slaughter*, 815 So. 2d at 1132 (¶ 53). The Court wrote directly on the point in *Crenshaw v. State*:

> The purpose of an opening statement is to inform the jury what a party to the litigation expects the proof to show. Sometimes the proof does not follow the expectations of the party's attorney in opening statement and, if so, that failure usually militates against the party. In the case sub judice, the court cautioned the jury that the opening statements by the attorneys is not evidence and would not be evidence until admitted by the court either in the form of testimony or physical evidence.

*Crenshaw v. State*, 513 So. 2d 898, 900 (Miss. 1987).

¶16. In the instant case, the trial judge properly instructed the jury not to consider the statements of the attorneys as evidence. At the start of the trial, the judge instructed the jury: "Now, whatever the attorneys say throughout the trial, particularly in opening statement and closing statement, what the attorneys say is not evidence." Because opening statements are not evidence, they are not subject to the Mississippi Rules of Evidence.

¶17. Second, even if opening statements were evidence, counsel's statements would not constitute inherently inadmissible evidence. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so

as to be prejudicial to the accused, the Court will not reverse this ruling." ***Gore v. State***, 37 So. 3d 1178, 1183 (¶ 13) (Miss. 2010) (internal quotation marks omitted) (quoting ***Price v. State***, 898 So. 2d 641, 653 (¶ 29) (Miss. 2005)).  It was within the judge's discretion to determine that Jones carrying a gun was not prior-bad-act character evidence that required exclusion under Rule 404(b).  Alternatively, the judge could have determined that the statement was excludable but  allowed it under Rule 404(b)(2) as showing opportunity or intent.  The Court has held that "the trial court's failure to identify the specific applicable exception(s) under Rule 404(b) does not require reversal." ***Green v. State***, 89 So. 3d 543, 551 (¶ 17) (Miss. 2012) (citing ***Gore***, 37 So. 3d at 1187 (¶ 20)).

¶18.    Third and finally, the opening statement and examination of Guice regarding Jones's habit of carrying a gun could not have irreparably prejudiced the jury because testimony of both defense witnesses also informed the jury that Jones sometimes carried a gun.  The following exchange occurred during the cross-examination of Hamlin:

Q. You had never seen him with a gun before?

A. No. Like, sometimes.

Q. You're under oath. You understand what being under oath is, right?

A. (Nods affirmatively.)

Q. So you had seen -- you had seen Kemond with a gun before?

A. (Nods affirmatively.)

Q . Is that a yes?

A. Sometimes.

Additionally, the following exchange occurred during the cross-examination of Jones:

Q. Why did you have a gun?

A. I just kept one sometimes. No specific reason.

¶19.    The testimony that Jones claims was erroneously admitted and that he claims unduly prejudiced the jury was allowed into evidence by both defense witnesses without objection. Because the information was given to the jury by other witnesses, there could not have been a prejudicial effect on the jury by the opening statement or the examination of Guice.  Even if the statements should have been excluded, they did not "adversely affect[] a substantial right of" Jones.  *Whitten*, 799 So. 2d at 13 (¶ 27) (quoting *Floyd*, 749 So. 2d at 113 (¶ 12). The trial court committed no reversible evidentiary error.

## II.    Whether the verdict was against the overwhelming weight of the evidence.

¶20.    "The standard for reversing a jury's verdict as against the overwhelming weight of the evidence is very high."  *Collier v. State*, 183 So. 3d 885, 893 (¶ 34) (Miss. 2016) (citing *Moore v. State*, 151 So. 3d 200, 202 (¶ 9) (Miss. 2014)).  "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice."  *Whitten*, 799 So. 2d at 13 (¶ 26) (internal quotation marks omitted) (quoting *Sheffield v. State*, 749 So. 2d 123, 127 (¶ 16) (Miss. 1999)).  Additionally, when weighing the evidence on review, the Court must "weigh the evidence in the light most favorable to the verdict[.]" *Lenoir v. State*, 222 So. 3d 273, 278 (¶ 20) (Miss. 2017) (citing *Bush v. State*, 895 So. 2d 836, 844 (¶ 18)

(Miss. 2005), *abrogated on other grounds by* **Little v. State**, 233 So. 3d 288, 292 (¶ 19) (Miss. 2017)).

¶21.    In the case sub judice, weighing the evidence in the light most favorable to the verdict, the standard for reversing the jury verdict has not been met.  The other evidence aside, the eyewitness testimony of Guice alone would be sufficient.  It is the long-established precedent of the Court that "persons may be found guilty on the uncorroborated testimony of a single witness." **Doby v. State**, 532 So. 2d 584, 591 (Miss. 1988) (citing **Ragland v. State**, 403 So. 2d 146 (Miss. 1981)).  The fact that Jones presented contradictory eyewitness testimony does not negate the rule because "[a] jury may accept the testimony of some witnesses and reject that of others." **Id.**  "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." **Meshell v. State**, 506 So. 2d 989, 992 (Miss. 1987) (citing **Arteigapiloto v. State**, 496 So. 2d 681, 686 (Miss. 1986)).  The Court will not disturb the verdict of the jury based on the weight of the evidence.

### III.    Whether *Weathersby v. State* should apply.

¶22.    Jones argues that the Court should apply the rule from **Weathersby v. State**, 165 Miss. 207, 147 So. 481, 482 (1933).  In **Weathersby**, the Court wrote:

> It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

**Id.** (citing **Houston v. State**, 117 Miss. 311, 78 So. 182 (1918)).

¶23.   *Weathersby* is still good law in Mississippi, but it has no application in the case sub judice.   The rule requires that the "defendant or the defendant's witnesses" be the *only* eyewitness testimony.  **Id.**  The prosecution also presented eyewitness testimony.  Thus, the argument is without merit.

## CONCLUSION

¶24.   The jury was not unduly prejudiced by inadmissible evidence; the verdict is not contrary to the weight of the evidence; and **Weathersby v. State** does not apply.  Therefore, the judgment of the Warren County Circuit Court is affirmed.

¶25.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**